**FILED**

NOV 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA



SAMUEL K. JACOBS,
2300 M Street NW
Suite 838
Washington, D.C. 20037, and,

NANCY HECKERMAN
2300 M Street NW
Suite 838
Washington, D.C. 20037,

     PLAINTIFFS,

v.

RESERVOIR LIMITED PARTNERSHIP
20 S. Charles Street
Baltimore, Maryland 21201

     DEFENDANT.

C    Case: 1:07-cv-02058
      Assigned To : Walton, Reggie B.
Jl   Assign. Date : 11/14/2007
      Description: Pro Se General Civil

**COMPLAINT FOR EQUITABLE
LIEN ON REAL PROPERTY**

**JURY TRIAL DEMANDED**

---

## COMPLAINT FOR EQUITABLE LIEN ON REAL PROPERTY

Notice is hereby given that this *in rem* action is filed against the specific property so named in this Complaint that is owned, or leased, or in trust, by Defendant Reservoir Limited Partnership, and/or their so named heirs, trusts, corporate entities for which they are officers or financial contributors and any of their directly and indirectly owned organizations and enterprises including all of their foreign corporations, which may have interest in this property.

This Equitable Lien is filed pursuant to the criminal actions taken by the named Defendants named in the 'AMENDED COMPLAINT FOR CONSPIRACY UNDER RACKETEERING INFLUENCED CRIMINAL ORGANIZATION ACT (RICO)' filed in this Court as Case Number: 1:07CV1625 in this Court on October 12, 2007. It is alleged that said Defendants in that case who

are Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan have conducted, and are conducting, a pattern of racketeering activities in the property stated in this Complaint pursuant to, but not limited to, Title 18 U.S.C.A. § 1961 (Definitions); Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television); and Title 18 U.S.C.A. § 1341 (Frauds and swindles). A copy of that Complaint is attached to this Equitable Lien as 'Exhibit A' and incorporated by reference herein.

That this lien is an equitable cause of action pursuant to the rights granted by Title 18 U.S.C.A. § 1964(a) and (c), which was enacted pursuant to Article I, Section 8, and Amendment IV of the Constitution of the United States, since some of the defenses hereafter pleaded are cognizable only in a court of equity.[1]

A. That in addition to the above stated statutes and the pattern of racketeering activities cited in Case Number: 1:07cv1625, there is other recently discovered evidence of further violations of the criminal statutes by Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A., who are in conspiracy and collaboration with enemies of the United States in Canada and other countries, as well as with Defendant Reservoir Limited Partnership, and these liaisons have directly affected the lives and safety of the Plaintiffs and their immediate family, slandered their names, and affected their ability to conduct business in their own offices due to the threats of violence by one or more of those terrorists with whom Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A. are associated and which have taken place from the property cited in this Equitable Lien.[2]

---

[1] 'Congress ... ascrib[es] to the property a certain personality, a power of complicity and guilt in the wrong." J.W. Goldsmith, Jr.— *Grant Co. v. United States*, 254 U.S. 505, 510 (1921).
[2] Section 121: **Definition of Terrorist Activities.**

B. That the Defendant Reservoir Limited Partnership has given aid and comfort to these agents of the enemies of the United States through the levying of War against the United States to the detriment of the United States, by accepting funds from Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan which has been laundered within the United States, and outside the United States in violation of Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments) and Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).

C. That by accepting funds from these parties who have levied War against the United States through RICO conspiracies formed through RICO enterprises in violation of Title 18 U.S.C.A. § 241 (Conspiracy against rights) and Title 18 U.S.C.A. § 242 (Deprivation of rights under color of law), this equitable lien is also filed pursuant to numerous violations of the Patriot Act as enacted by Congress on October 26, 2001, otherwise known as Title 18 U.S.C.A. § 2331 (Definitions) and Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries).[3]

---

This section adds a definition of "terrorist activities" to the definitional section for the chapter of the criminal code governing electronic surveillance (chapter 119). The definition encompasses criminal acts of domestic and international terrorism as defined in 18 U.S.C. § 2331, together with related preparatory, material support, and criminal activities.

[3] Section 123: **Extension of Authorized Periods Relating to Surveillance and Searches in Investigations of Terrorist Activities.**

In *Katz v. United States*, 389 U.S. 347 (1967), the Supreme Court held for the first time that government wiretapping was subject to the Fourth Amendment. In response, Congress enacted Title III of the 1968 Omnibus Crime Control and Safe Streets Act, 28 U.S.C. §§ 2510-2522, which governs electronic surveillance for all federal criminal offenses. Congress also subsequently enacted the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2712, which addresses government access to stored communications, and established statutory standards and procedures for the use of pen registers and trap and trace devices, 18 U.S.C.§§ 3121-3127. Further, because Katz and progeny specifically stated that the Court did not hold that the same Fourth Amendment restrictions applied with respect to the activities of foreign powers and their agents, in 1978 Congress enacted the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1801-1862, which establishes standards applicable to surveillance of foreign powers and agents of foreign powers-- including electronic surveillance, physical searches, and use of pen registers and trap and trace

D.  That these Plaintiffs have appealed to the Attorney General of the United States to order the forfeit of this property, and any related personal property, pursuant to: Title 18 U.S.C.A. § 1963 (Criminal penalties), Title 18 U.S.C.A. § 981 (Civil forfeiture); Title 18 U.S.C.A. § 982 (Criminal forfeiture); Title 18 U.S.C.A. § 983 (General rules for civil forfeiture proceedings); Title 18 U.S.C.A. § 984 (Civil forfeiture of fungible property); Title 18 U.S.C.A. § 985 (Civil forfeiture of real property); and, Title 18 U.S.C.A. § 986 (Subpoenas for bank records).

E.  That Defendant Reservoir Limited Partnership is not an innocent party in this equation. The Defendant has been aware of what transactions are being conducted and controlled, and been knowledgeable of where and how the funds were obtained from Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan. It is the burden of Defendant Reservoir Limited Partnership to prove that it had no connection with the aforementioned parties in Case Number: 1:07cv1625 and that it has received no income from any of these parties, or special considerations for the involvement in the SUA's cited in this Complaint or the aforementioned complaint.

F.  That Plaintiffs assert that it is imperative that the Attorney General of the United States process the request for these forfeitures for these assets as expeditiously as possible pursuant to Title 18 U.S.C.A. § 981 (Civil forfeiture) and Title 18 U.S.C.A. § 1963 (Criminal penalties) since justice has been denied, and contrived, in previous proceedings due to violations of Title 18 U.S.C.A. § 241 (Conspiracy against rights) and Title 18 U.S.C.A. § 242 (Deprivation of rights under color of law).

---

devices--in relation to the investigation of such matters as international terrorism and espionage. (Domestic Security Enhancement Act of 2003 (DSEA) or Patriot Act II—January 9, 2003)

G. That justice will only prevail after criminal indictments are issued and submitted as evidence for the civil proceedings so that the Plaintiffs can recover from the most grievous losses and irreparable damages inflicted by Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan through criminal actions with third parties under color of the law since Yelin Shi an Yu Fan are directly financed by the those who have previously stolen over $1,500,000.00 from these Plaintiffs through fraudulent bank transfers to The Peoples Republic of China for which the Plaintiffs have received evidentiary and certified proof.

H. That Plaintiffs aver that these assets should immediately be seized and or converted as soon as possible so that any of these corrupted funds cannot be converted into covinous and fraudulent transfers designed "to delay, hinder or defraud creditors and others" of assets to third parties since such funds cannot be used for defense of said RICO violations.

> The modern law of fraudulent transfers had its origin in the Statute of 13 Elizabeth, which invalidated "covinous and fraudulent" transfers designed "to delay, hinder or defraud and others." ... English courts soon developed the doctrine of "badges of fraud": proof by a creditor of certain objective facts (for example, a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration) would raise a rebuttable presumption of actual fraudulent intent.[4]

I. **That Plaintiffs assert their right to ask the Department of Justice to implement Title 18 U.S.C.A. § 1966 (Expedition of actions), since the Plaintiffs are allowed to plead the Attorney General of the United States to file a certificate stating that in his opinion the case is of general public importance and request that the chief judge should *"designate immediately a judge of that district to hear and determine action."***

That Plaintiffs aver generally that all conditions precedent have been performed or have occurred, and plaintiffs state the following, to-wit:

---

[4] *BFP v. Resolution Trust Corp.*, 128 Led. 2d at 566 (citations omitted).

## I. THE PARTIES

1.    The names and addresses of the plaintiffs are as follows:

a.  SAMUEL K. JACOBS, (hereafter known as "Jacobs"). His address is 2300 M Street NW, Suite 838, Washington, D.C. 20037, and

b.  NANCY HECKERMAN, (hereafter known as "Heckerman"),    and her address is 2300 M Street NW,  Suite 838, Washington, D.C. 20037. Except where the context is otherwise indicated, reference to "Plaintiffs" refers to each of the named Plaintiffs.

2.    On information and belief, the names and addresses of the defendant corporation is as follows:

a.    RESERVOIR LIMITED PARTNERSHIP, 20 S. Charles Street, Baltimore, Maryland 21201, which is owner of the property which is subject of this Equitable Lien.

## II. JURISDICTION AND VENUE

3.    That the jurisdiction for this cause lies with Title 28 U.S.C.A. § 1331 (Federal Question) and Article III, Section 3, due to the treasonous acts that this Defendant has committed through its association with Enemies of the United States, and, pursuant to:

a.    Article I, § 8, cl. 3 of the Constitution of the United States which is commonly referred to as the Commerce Clause and which gives Congress the power *"[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."*

b.    Article I, § 9, cl. 3 of the Constitution of the United States: *"No Bill of Attainder or ex post facto law shall be passed."*

c.  Amendment IV of the Constitution of the United States:  *"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,*

*shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and the persons or things to be seized."*

    d.    Amendment V of the Constitution of the United States: " ..., *nor be deprived of life, liberty, or property, without due process of law;..."*

    e.    Amendment XIV of the Constitution of the United States: " . . .*nor deny to any person within its jurisdiction the equal protection of the laws."*

    4.    The RICO statutes were enacted by Congress pursuant to Article I of the Constitution and are the statute jurisdiction upon which this Complaint also chiefly relies as follows:

    a. Title 18 U.S.C.A. § 1964 (c) (Civil remedies);

    b. Title 18 U.S.C.A. § 1962(a) (Prohibited activities) which provides for the forfeiture of any interest acquired in violation of any part of the statute;

    c. Title 18 U.S.C.A. § 1961(1)(E): *"any act which is indictable under the Currency and Foreign Transactions Reporting Act,"* ;

    d. Title 18 U.S.C.A. § 1956(c)(7)(F) (Laundering of monetary instruments), specifically:

    5. And, under the Domestic Security Enhancement Act of 2003 (DSEA) or Patriot Act II—January 9, 2003): Title 18 U.S.C.A. § 2331 (Definitions) and Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries).

    6.    The following statutes also apply to the jurisdiction:

    The laws enacted thereof entitled Title 18 U.S.C.A. § 1346 (Definition of "scheme of artifice to defraud") in conjunction with the RESTATEMENT (SECOND) OF RESTITUTION, QUASI CONTRACTS, AND CONSTRUCTIVE TRUSTS, § 202(c). Also, the laws of forfeiture as applied to fraudulent transfers pursuant to Title 18 U.S.C.A. § 1963 (Criminal penalties), Title 18

U.S.C.A. § 981 (Civil forfeiture); Title 18 U.S.C.A. § 982 (Criminal forfeiture); Title 18 U.S.C.A. § 983 (General rules for civil forfeiture proceedings); Title 18 U.S.C.A. § 984 (Civil forfeiture of fungible property); Title 18 U.S.C.A. § 985 (Civil forfeiture of real property); and, Title 18 U.S.C.A. § 986 (Subpoenas for bank records).

7. That, furthermore, in conjunction with the aforementioned violations of the Constitution of the United States, the Plaintiffs cite the following statutes which the Defendants are alleged to have violated:

    a.  Title 18 U.S.C.A. § 241 (Conspiracy against rights);

    b.  Title 18 U.S.C.A. § 875(b),(c), and (d) (Interstate communications);

    c.  Title 18 U.S.C.A. § 2112 (Personal property of the United States) ;

    d.. Title 18 U.S.C.A. § 2313 (Bank robbery and incidental crimes);

    e.  Title 18 U.S.C.A. § 1028 (Fraud and related activity in connection with identification   documents, authentication features, and information);

    f.  Title 18 U.S.C.A. § 1028A.  (Aggravated identity theft);

    g.  Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television);

    h. Title 18 U.S.C.A. § 1346 (Definition of "scheme or artifice to defraud");

    i. Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence);

    j. Title 18 U.S.C.A. §1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises);

    k.  Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments);

    l.  Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity);

m. Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity);

n. Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries);

o. Title 18 U.S.C.A. § 2314 (Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting);

8. That venue for this Complaint is based pursuant to Title 28 U.S.C.A. § 1391(b) (Venue generally), and the clause in that statute which states: "*except as otherwise as provided by law*", is the criteria by which this Complaint is filed pursuant to Title 18 U.S.C.A. § 1965 (a) (Venue and process) which designates that a proceeding may be instituted in any court in any district (of a United States District Court) wherein a defendant "*resides, is found, has an agent, or transacts his affairs.*"

9. That Plaintiffs aver that this Complaint in no respect should eliminate or limit the Plaintiffs' participation on claims which may evolve pursuant to Title 18 U.S.C.A. § 1963 (f) when deemed applicable and feasible by the Attorney General of the United States.

10. That the value in controversy is over $75,000.00 and the parties, or their incorporated place of business, are citizens of, or reside in, different states.[5] The Plaintiffs claim damages in excess of $9,292,000.00, trebled. Trial by Jury requested pursuant to **Amendment VII** of the Constitution of the United States and **Rule 38 of the Federal Rules of Civil Procedure**.

## III.  DESCRIPTION OF REAL PROPERTY

11. That the Plaintiffs aver that the hereinafter described real estate occupied by said Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., and Defendant

---

[5] A person has statutory standing if the person has constitutional standing and is within the plaintiff class the statute creates. *Federal Election Commn. v. National Conservative Political Action Comm.,* 470 U.S. 480, 484-490 (1985).

Reservoir Limited Partnership must be charged with the payment of the Plaintiffs' claims thereof pursuant to Title 18 U.S.C.A. § 1964 (a)[6] and (c); and that the same be declared a lien thereon for the payment of which said property may be sold.

12.   The property  and entire buildings affected by said action are situated in the County of Baltimore, State of Maryland, and are described as follows:

    Executive Centre
    4 Reservoir Circle
    Baltimore, Maryland  21208-7301

LEGAL DESCRIPTION:
    IMPSUNIT 101 BLDG. D
    4 RESERVOIR CIR SWS

OWNERHIP AND ADDRESS INFORMATION:
    PARCEL ID:  22-00-021780
    OWNER NAME:  Reservoir Limited Partnership
    OWNER ADDRESS: 20 S. Charles Street, Baltimore, MD 21201
    PROPERTY/SITUS ADDRESS: 4 Reservoir Cir
    DISTRICT:  03
    PROPERTY CLASS: 15 Office Building
    ACTIVITY: Not Semi Annual Eligible

13.   That the Defendant's RICO  activities constitute a great and irreparable injury to Plaintiffs' personal name and integrity, which include the deprivation of life, liberty, and property without due process of the laws pursuant to Amendment V and Amendment XIV of the Constitution of the United States, and without equal protection of the laws pursuant to Amendment V of the Constitution,  from the nature and character of which injury  redress at law would be uncertain and

---

[6] §1964(a): The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions  on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; *or ordering dissolution or reorganization of any enterprise,  making due provision for the rights of innocent persons.* (Emphasis added).

inadequate, and the damages resulting thereof impossible of ascertainment. Therefore, this Equitable Lien is hereby filed.

## IV.  INTRODUCTION  AND BACKGROUND

14.    That Plaintiffs state that the property upon which the proceedings for this Equitable Lien are initiated has been used and is being used for specified unlawful purposes, [7] or is the result of the Defendant's participation in specified unlawful activities for which Title 18 U.S.C.A. § 1963 (Criminal penalties), Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments), Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity) and Title 18 U.S.C.A. § 981 (Civil forfeiture)[8] were enacted.  Congress intended the term "property involved in" to be broadly construed to include not only the funds laundered, but any fees earned for the money laundering, and all property facilitating the money laundering activities.

> E.g., 134 Cong. Rec. 27419 (Nov. 10, 1988) ("[T]he term 'property involved' is intended to include the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense.") (Section by section analysis of the bill which became Pub.L. 100-690); *United States v. All Monies* ($477,048.62), 754 F.Supp. 1467, 1473 (D.Haw.1991) (hereinafter *"$477,048"*).

15.  That under § 1956 (Laundering of monetary instruments) and Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity) the compensation to victims is mandated by the procedure stated in Title 18 U.S.C.A. § 981 (Civil

---

[7] However, all property is held under the implied obligation that the owner's use of it shall not be injurious to the community, and the owner cannot complain if loss ensues after the law works a forfeiture in the suppression of an evil connected with the use thereof. *State v. McGraw*, 183 N.W. 593, 191 Iowa 1090.

[8] § 981 (a)(1) (Civil forfeiture): *"The following property is subject to forfeiture to the United States: (A) Any property, real or personal, involved in a transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property."*

forfeiture)[9] and Title 18 U.S.C.A. § 983 (General rules for civil forfeiture proceedings). Plaintiffs

assert that there is reasonable ground and probable cause to believe that such offenses have been

committed on that property, and/or this property is the result of the financial gain from those

offenses, and that the jurisdiction for this United States District Court is proper.[10] Plaintiffs state as

follows:

16.    That this 'Complaint For An Equitable Lien on Real Property' is the result of the

aforementioned collaboration of    Sidney S. Friedman, Frances S. Friedman, Greg I. Rose,

Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan who have threatened to obtain

money and property from the victim Plaintiffs through extortion and theft by conversion in order

to maintain the property so stated in this Equitable Lien where the RICO pattern of racketeering

activities are being conducted and controlled through Title 18 U.S.C.A. § 241 (Conspiracy against

rights) and Title 18 U.S.C.A. § 242 (Deprivation of rights under color of law).

17.    That Plaintiffs aver that the acts of the said aforementioned parties to threaten to steal

through fraud and conspiracy the goods, equipment, papers, effects and other property from the

offices or other property of the Plaintiffs is construed as a violation of Title 18 U.S.C.A. § 1951

(Interference with commerce by threats or violence); Title 18 U.S.C.A. § 2314 (Transportation of

stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting);

Title 18 U.S.C.A. § 1952 (Interstate and foreign travel or transportation in aid of racketeering

---

[9] *United States v. Eleven Vehicles*, 836 F. Supp. 1143, 1148-49 (E.D.Pa. 1995) ("As with most forfeiture provisions, the range of property subject to forfeiture is broad;" citing to cases applying § 981 to a wide range of property and situations.)

[10] *United States v. Eleven Vehicles*, 836 F. Supp. 1147, 1155 (E.D.Pa. 1993) (quoting *Money Laundering Crimes Act of 1986*, S.Rep.99-433 (1986) which was quoting *Commission on Organized Crime, The Cash Connection: Organized Crime, Financial Institutions, and Money Laundering*, 8 (1984)), *subsequent decisions*, 898 F. Supp. 1143 (1995) and 937 F. Supp 1143 (1996).

enterprises); Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity); and Title 18

U.S.C.A. § 875(b),(c), and (d) (Interstate communications).

18.   That said actions are also indictable pursuant to Title 18 U.S.C.A. § 2331 (Definitions)

because of the theft of any documents which might pertain to the national security of the United

States pursuant to Title 18 U.S.C.A. § 2112 (Personal property of the United States)[11] and Title 18

U.S.C.A. § 2113 (Bank robbery and incidental crimes);

> …The fact that the forfeiture provision reaches assets that could be used to pay attorney's
> fees, even though it contains no express provisions to this effect, 'does not demonstrate
> ambiguity' in the statute: 'It demonstrates breadth.' [12]

19.   That Plaintiffs assert that newly discovered evidence which is directly related to

and indicative of further patterns of racketeering activities by the aforementioned conspirators

named as Defendants in Case Number 1:07CV1625, has demonstrated the extent to which these

conspirators will violate the laws of the United States in order to commit further acts of theft and

fraud. This new evidence has necessitated the filing of this 'Complaint for Equitable Lien on Real

Property.'

20.   That the compensatory damages to satisfy this basic financial loss and damage to

domestic and international commerce due to the pattern of racketeering activities which has caused

irreparable damage and injury to the Plaintiffs' business amounts to over $9,962,000.00 and the

punitive damages will be determined at trial due to the third party beneficiaries who have informed

the Plaintiffs that they are filing lawsuits against these Plaintiffs and Sidney S. Friedman, Greg I.

Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan for their breach of contract

---

[11] Any attempt to enter the premises where the Plaintiffs reside, conduct their business, or have an
agent, shall be construed as an attempt to steal the property of the United States which may be in the
possession of the Plaintiffs due to the status of Plaintiff Samuel K. Jacobs who is an officer under
the Executive Branch of the United States.

[12] *United States v. Monsanto*, 491 U.S. 600, 606-07, 609 (1989) (emphasis in original)

and inducement to breach contract and the legal counsel's instructions to maintain the breaches of contract—for which they received 'fees'.

21. That the Plaintiffs allege that these damages which have already occurred and will continue to occur, will be in excess of the combined assets of Weinstock, Friedman & Friedman, P.A. and the RICO persons who are being sued individually since Plaintiffs believe that the assets of Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan are extremely varied, evasive, and movable except for the properties involved where the mail and wire fraud have transpired or which are the result of the pattern of racketeering activities by which they are paying mortgages and other fees for the upkeep of these properties.

22. That this RICO enterprise within Reservoir Limited Partnership knew of the money laundering and other fraudulent acts committed in the name of Weinstock, Friedman & Friedman, P.A. were in violation of the Consumer Protection Act and the Fair Debt Collection Practices Act, and no innocent hands were involved in these transactions. Weinstock, Friedman & Friedman, P.A. envelopes this typical RICO enterprise which operates to violate the RICO statutes as defined in Title 18 U.S.C.A. § 1956(c)(7)(D) (Laundering of monetary instruments) and § 1961(1) (Definitions).

## V.  STATEMENT OF FACT

23. That Plaintiffs aver that said RICO enterprises have committed these alleged acts through multiple and repetitive violations of the Consumer Protection Act and the Fair Debt Collection Practices Act. Plaintiffs are not an isolated issue and discovery will reveal other complaints which have been filed against this RICO enterprise of Weinstock, Friedman & Friedman, P.A. for these same or similar issues.

24. That the involvement of Defendant Reservoir Limited Partnership is involved with the other aforementioned parties in the cause of this Equitable Lien who are the subject of other outstanding lawsuits, and are involved in transactions in which two or more parties exchange property and some of the property is the proceeds of an SUA. Most common is the exchange of real property with special incentives to perform some task which the other party would not have had the ability to perform without the extra incentive. Real estate is the common denominator in these instances since artificial mortgages for the property can be arranged, prices well above the appraisal price, or well below the appraisal price, or artificial owners listed on the deed and then later changed after closing, can disguise the real purchasers of the property and how it was acquired—or leased. Plaintiffs will provide substantial proof of these allegations at trial.

> When property is acquired with a false loan application, the whole property, not just the amount of the loan, is forfeitable as "involved in" the transaction with the proceeds of the bank, mail or wire fraud.[13]

### A. Wire Fraud and Related RICO Activities

25. That foremost in the list of properties owned by the Defendant Reservoir Limited Partnership is the property which is subject of this Equitable Lien and which the Plaintiffs assert is the main location and property where the majority of RICO activities occurred through wire fraud pursuant to Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television).

26. That Sidney S. Friedman, Greg I. Rose, through Weinstock, Friedman & Friedman, P.A., have made numerous interstate and telephone calls and facilitated other interstate wire systems and wire facilities in repeated violations of Title 18 U.S.C. § 1343 (wire fraud). The use of interstate and foreign wire systems included but were not limited to implied banking threats of

---

[13] United States v. One 1990 Porsche, 807 F. Supp. 371, 373 (D.Md. 1992) (false loan application resulted in an $18,000 loan which provided part of the purchase price of a vehicle for $73,500).

murder, and threats of kidnapping or other violent acts through interstate telephone calls to the plaintiffs to and from Canada, the States of Maryland, Virginia, other States and countries, the purpose of which was to enter into, execute, effectuate, facilitate, and promote the aforesaid frauds and schemes.

27.  That Plaintiffs aver that under Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television) and Title 18 U.S.C.A. § 1341 (Frauds and swindles) Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan have committed numerous wire frauds to and  from the property which is the subject of this Equitable Lien including the conspiracies formed through wire fraud which includes  the recent RICO enterprise of conspiracy formed by Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan with Vijay Patel and Dilip Patel of Montreal, Canada.

28.  That Vijay Patel and Dilip Patel, Citizens or residents of Canada,  have already stated in detail to the Plaintiffs, and others, that they have given  statements of their overt acts of  their conspiratorial activities with Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan including the Plaintiffs' banking information which is deemed as identity theft pursuant to Title 18 U.S.C.A. § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information) and Title 18 U.S.C.A. § 1028A. (Aggravated identity theft). Evidence of this conspiracy will be revealed by discovery and who represents Vijay Patel and Dilip Patel in court.

29.  That said acts of identity theft were submitted through wire fraud pursuant to Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television),   and another  new RICO enterprise of conspiracy was formed pursuant to Title 18 U.S.C.A. § 241 (Conspiracy against rights). Said RICO conspiratorial enterprise has also committed other tort actions for invasions of right to privacy,

slander, and libel. *But, foremost in the list of criminal activities of this RICO group of RICO criminals are the crimes that they have conspired to commit against the United States.*[14]

30. That through wire fraud a conspiracy was formed to plan and execute the overt acts of extortion, threats of theft, larceny, actual and intended violations of the laws of the United States, and other RICO predicate acts through which these schemes were effected in violation of Title 18 U.S.C.A. § 241 (Conspiracy against rights) and Title 18 U.S.C.A. § 242 (Deprivation of rights under color of law). Sidney S. Friedman has appeared by himself in the State court to make sure that the conspiracies are completed as requested and the transcripts reflect this prejudice. 'Appropriate relief' is a guise for theft.

31. That within the offices of Weinstock, Friedman & Friedman, P.A. which are located within this subject property these patterns of racketeering activities have been executed in violation of Title 18 U.S.C.A. § 2113 (Bank robbery and incidental crimes) and Title 18 U.S.C.A. § 875 (Interstate communications) as cited under Title 18 U.S.C.A. § 1956(c)(7)(D) (Laundering of monetary instruments) through interstate and international commerce in violation of Title 18 U.S.C.A. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises) pursuant to Title 18 U.S.C.A. § 1961 (Definitions).

32. That Title 18 U.S.C.A. § 2113 (a) (Bank robbery and incidental crimes) states:

*"Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan;*

---

[14] *United States v. One 1987 Mercedes Benz*, 820 F. Supp. 248, 252 (E.D.Va.1993) (claimant admitted $12,901 check was proceeds of the SUA, extortion, but argued $9,000 was form an untainted source. "This argument fails because the forfeiture is triggered not by the extortion itself, but by the purchase of the vehicle, which was a prohibited money laundering activity. Thus, it is the entire vehicle that was involved in the money laundering transaction, not merely the funds traceable to the extortion. And it is therefore the entire vehicle that is subject to forfeiture.")

*Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, or building, or part thereof, so sued, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—*
*Shall be fined under this title or imprisoned  not more than twenty years, or both. "*

33.   That Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan know that they have executed feloniously obtained judgments   which they have obtained  through fraud and conspiracy and the Plaintiffs have obtained the necessary evidence of these criminal acts pursuant to Title 18 U.S.C.A. § 241 (Conspiracy against rights) to prove that the conspiracy is now unequivocally  complete. This will be presented in a separate cause of action.

*B.  Prohibited  Activities*

34.   That Plaintiffs further allege that Defendant Reservoir Limited Partnership has conspired to allow Sidney S. Friedman, Greg I. Rose, and Weinstock, Friedman & Friedman, P.A. to  conduct and  control  the RICO enterprises on the property which is the subject of this Equitable Lien and these RICO activities have operated to effectuate these irreparable damages and injuries against the Plaintiffs' domestic and international commerce pursuant to Title 18 U.S.C.A. § 1962 (b), (c), and (d) (Prohibited activities).

35.   That, therefore, the Plaintiffs may sue for appropriate relief for these irreparable injuries and damages pursuant to Title 18 U.S.C.A. § 1964(c) (Civil remedies) :

*"Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no personally rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. "*

36.   That there are newly discovered racketeering activities which are  demonstrative of the white collar crimes which initiated the enactment of the civil Racketeering Influenced Criminal

Organization Act (RICO) of 1970, and Defendant Reservoir Limited Partnership and Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan are violating these statutes through its RICO enterprises and operations for their multiple businesses in Canada as well as the States of Maryland and Virginia, the District of Columbia, and other States and countries known and not known.[15]

37.    That this complaint also adds to the list of predicate acts instigated by Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan the overt acts of threats of violence pursuant to Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence); Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity); and theft by conversion pursuant to Title 18 U.S.C.A. § 2314 (Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting).

38.    That this unauthorized invasion of privacy and violation of the laws has affected the Plaintiffs' ability to do business through character assaults and slanderous innuendos to banking establishments in violation of Title 18 U.S.C.A. § 1962(c) and (d).

39.    That said Defendant and Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan, have committed overt and predicate acts of RICO violations and have unlawfully, willfully, and knowingly received income derived from, directly and indirectly, and have used and invested, directly and indirectly, such income or the proceeds thereof in the promotion and continuation of the RICO enterprises as aforementioned in this complaint in violation of Title 18 U.S.C. § 1962 (a).

---

[15] § 981 (a)(1)(D): Any property, real or personal which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of—(v) section 1341 (relating to mail fraud) ; or (vi) section 1343 (relating to wire fraud).

## C. Commingled Funds

40.    That the object of this said action is for the purpose of having it adjudged that the Plaintiffs, Samuel K. Jacobs and Nancy Heckerman, do have a claim upon real property in order to recover from judgment in *Samuel K. Jacobs, et al, v. Sidney S. Friedman, et al*, a sum of $9,292,000.00, which shall be trebled pursuant to a claim filed under Title 18 U.S.C.A. § 1964 (c) (Civil remedies) with interest thereon from April, 2004, besides the punitive damages, and costs of these actions. Proceeds from the RICO activities of Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan have commingled with otherwise legitimate funds and have supplied payment for this property.

> *Edgecombe Bank & trust Co. v. Barrett*, 238 N.C. 579, 586 (1953). The victims are within their rights to say, "We are entitled to pursue the just so long as we can track the fox; and not until we lose the trail are we obliged to abandon the chase, call our dogs and go home." *Jarrett v. Green,* 230 N.C. 104, 108 (1949). Less colorfully, "where the converted property has assumed altered forms by successive investments, the owner may follow it as far as he can trace it and sue at law for the substituted property, or he may hold the wrong does liable for appropriate damages." [16]

41.    That as previously inferred, other monetary claims are being demanded by the Plaintiffs in this 'Complaint for Equitable Lien on Real Property' due to the newly discovered evidence which substantiates the Plaintiffs' claims of patterns of racketeering activities which involve violations of Title 12 U.S.C.A. banking laws, Title 26 U.S.C.A. Internal Revenue Service laws, Title 18 U.S.C.A., and the Patriot Act. That the violations of these laws as enacted by Congress are defined pursuant to Title 18 U.S.C.A.: § 1961(1) (Definitions), § 1956 (c)(7)(D) (Laundering of monetary instruments); § 1964(c) (Civil remedies); § 1962 (Prohibited activities); and §1965 (Venue and process).

---

[16] *May v. LeClaire,* U.S. (11 Wall.) 217, 235-236, 20 L.Ed. 50, 54 ( 1871). Federal Money Laundering: Crimes and Forfeiture, by B. Frederic Williams, Jr. and Frank D. Whitney (1999), unless otherwise noted.

42. That this complaint is filed in compliance with, and is definitely sufficient to meet the requirements of Amendment VI of the Constitution of the United States that the accused are informed of the nature and cause of the accusations.[17]

43. That the Defendants have no standing to assert rights under Amendments IV and V of the Constitution of the United States with respect to bank records of payment of salary, cash deposits, electronic transfers, and stock proceeds from the alleged criminal entities, Weinstock, Friedman & Friedman, P.A. and any business entities of which Sidney S. Friedman and the other conspirators are partners, owners, have interest, or are associates in fact.[18]

"Restitution ordinarily compels return of the specific trust property since this remedy is designed to return both the wrongdoer and the victim to the status quo ante. When restitution in species is impossible, restitution requires the wrongdoer to return its proceeds as a substitute. When money must be substituted, the amount is measured by the greater of the victim's loss (returning the victim to status quo ante) or the wrongdoer's gain (returning the wrongdoer to status quo ante by depriving him of all proceeds of his wrongdoing), at the victim's choice. Sometimes the loss is not the amount misappropriated, but what profits the victim would have made." [19]

44. That falsely charging someone in business with being insolvent or bankrupt or owing money to the I.R.S. is libel per se since the Plaintiff's credit is essential to her or his business. Damages should be awarded to the Plaintiffs solely on what has been said to banking institutions or businesses which assess credit worthiness since the Plaintiffs have suffered anguish through the false representation of the character, amount or legal status of a fraudulently entered debt as claimed by Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu

---

[17] *Coplin v U.S*, C.C.A.9 (Wash.) 1937, 88 F.2d 652, certiorari denied 57 S.Ct. 929, 301 U.S. 703, 881 L.Ed. 1357.
[18] *Dosek v. U.S.*, C.A.8 (Neb.) 1968, 405 F.2d, certiorari denied 89 S.Ct. 2014, 395 U.S. 943, 23 L.Ed.2d 461.
[19] Federal Money Laundering; Crimes and Forfeiture, by B. Frederic Williams, Jr. and Frank D. Whitney (1999), unless otherwise noted.

Fan who are in collaboration with the Defendant Reservoir Limited Partnership. These acts are lascivious, unconstitutional, libelous and debauched.

45.    That this is an abuse of process since an ulterior motive exists, especially when the records are fraudulently entered or feloniously altered. [20]

46.    That the Defendants' acts are a violation of the Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures of the Citizen's person, papers, yet Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan have continuously violated this constitutional right in violation of Title 18 U.S.C.A. § 241 (Conspiracy against rights) and in collusion with third parties pursuant to Title 18 U.S.C.A. § 242 (Deprivation of rights under color of law). These fraudulent seizures are "gross receipts a person obtains, directly or indirectly, as a result of a violation of section 1956 or 1957" or property traceable to such gross receipts. This is known as the "gross receipts" standard. [21]

*D. Domestic and International Terrorist Activities*

47.    That under Title 18 U.S.C.A. § 2331 (Definitions), and Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries), the aforementioned Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan have joined Vijay Patel and Dilip Patel who have threatened to commit or have committed these criminal acts of violence for

---

[20] *United States v. McHan*, 101 F.3d 1027, 1041-43 (4th Cir.1996) *("McHan IV")* (proceeds includes all property received as a result of the violation without any deductions for cost of goods sold or expenses of doing business), *cert. denied*, 520 U.S. 1281, 117 S.Ct. 2468, 138 L. Ed. 2d 223 (1997). Or the "fee" for launderers of their own illegal proceeds is the totality of the property they receive in the money laundering transaction as property they can pretend to own legitimately.

[21] Section 982(a) provided that "[t]he court, in imposing sentence on a person convicted of an offense under section 1956 or 1957 of this title shall order that the person forfeit to the United States any property, real or personal, which represents the gross receipts the person obtained, directly or indirectly, as a result of such offense, or which is traceable to such gross receipts." Pub. L. 99-570, Title I, § 1366(a), 100 Stat. 3207-39 (Oct. 27, 1986).

theft by conversion or force, or threatened conspiracy to commit murder directly against the Plaintiffs or their family, and have threatened the kidnapping of small children through wire fraud in internet messages and telephone answering machines.

48. That Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan can be labeled as domestic terrorists if their activities are *"dangerous to human life"* in violation of Title 18 U.S.C.A. § 2331. Certain members of these parties know of the health conditions of the Plaintiffs and have purposely verbally attacked them with threats of kidnapping and molestation of their grandchild in order to induce fear of death, and this is attempted murder in violation of Amendment IV and Title 18 U.S.C.A. § 1117 (Conspiracy to murder).

49. That Defendant Reservoir Limited Partnership, Sidney S. Friedman, Greg I. Rose, Yelin Shi and Yu Fan are using Weinstock, Friedman & Friedman, P.A. as a diverse *"direct-action"* organization in order to operate as a **domestic terrorist group**. The actions of the Defendant Reservoir Limited Partnership and its associates are an all out attack on a Citizen without probable cause.

50. That the **ulterior motive** for this threat of theft by conversion is to destroy the lives of other humans beings because the truth about the money laundering, fraud, treason, bank embezzlement, and other criminal acts committed through RICO violations were revealed in Case Number:107cv1625 in this United States District Court.

51. That since Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan have joined Vijay Patel, and his known Al Qaeda associates, they are now part of the terrorist acts planned against the Untied States which are violations of the Patriot Act, Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries) and restitution for

the United States, and the Plaintiffs, are just pursuant to Title 18 U.S.C.A. § 982 (Criminal forfeiture).

52.   That Plaintiffs assert that   Defendant Reservoir Limited Partnership  has collaborated with Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi, Yu Fan, Vijay Patel and Dilip Patel, to join   this conspiracy which has made these fraudulent and felonious claims against not only the Plaintiffs, but against the United States,  through violations of Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments) and Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).

53.   That since Vijay Patel and Dilip Patel live in another country, the assets must be seized within the United States from those who have conspired with them in their planned and actual criminal acts against the United States and Officers of the United States.

## VI.  COURT AUTHORITY OVER ASSETS

54.   That  in order for the Plaintiffs to obtain the appropriate and adequate relief for the RICO crimes committed against their businesses, their associates and their personal lives, which have affected through a pattern of racketeering activities the Plaintiffs' ability to conduct international and domestic commerce,  the Plaintiffs will file a request that  the Court issue a pretrial restraining order or other action necessary to ensure that any bank account or other property held by the Defendant in the United States is available to satisfy a judgment under Title 18 U.S.C.A. § 1956 (b)(3) (Laundering of monetary instruments).

55.   That in *United States v. Certain Funds on Deposit in Account No. 01-0-71417*, the Eastern District of New York followed *United States v. All Monies* ($477,048.62), [22]  in that it held

---

[22] 754 F.Supp. 1467, 1473 (D. Haw.1991).

that *"section 981 (a)(1)(A) applies to property used to facilitate the alleged criminal violations."* [23]

This major precedent case refused to limit the forfeiture to the amount in seized accounts which could be traced to the SUA, and stated:

> Limiting the forfeiture of funds under these circumstances to the proceeds of the initial fraudulent activity would effectively undermine the purpose of the forfeiture statute. Criminal activity such as money laundering largely depends upon the use of legitimate monies to advance or facilitate the scheme. It is precisely the commingling of tainted funds with legitimate money that facilitates the laundering and enables it to continue.[24]

56.     That Plaintiffs aver that Sidney S. Friedman and  Edward Friedman are the owners or senior partners of a debt collection firm  which is an enterprise that is involved in criminal activities more heavily than legitimate enterprises and business procedures. Sidney S. Friedman and Edward Friedman are  each the *respondeat superior* for all of the corporations, subsidiaries, enterprises, and other entities which they control or which are controlled by the enterprise  within otherwise legitimate Weinstock, Friedman & Friedman, P.A. which is the main instigator of these predicate and overt acts.

> "Innocent" funds are typically a perquisite to the successful completion of money laundering, the essence of which is the purposeful mixture of tainted money with funds otherwise above suspicion. The more innocent the funds appear to be, the more difficult the crime becomes to detect. Therefore, funds are not immune from forfeiture solely because they are derived from legitimate sources; if such funds are used to effectuate money laundering, they are forfeitable under § 981 (Civil forfeiture), just as an otherwise legitimate dwelling would be under § 881 if used for drug-related activity. [25]

---

[23] 769 F.Supp. 80, 84 (E.D.N.Y. 1991).

[24] *Id.* at 84-85. This language is repeated by *United States v. Swank Corp.,* 797 F.Supp. 497, 503 (E.D.Va. 1992).

[25] *United States v. Certain Accounts,* 795 F. Supp. 391, 397 (S.D. Fla. 1992) (holding that funds deposited in an account which were "involved in" or "traceable to" money laundering violations shows probable cause for forfeiture of the entire balance in the account on a § 981 (Civil forfeiture) facilitation theory; also holding, however, that checks written on these accounts and deposited into other accounts did not create a sufficient connection to these "indirect" accounts; since there was no allegation the indirect accounts had been used for money laundering, it dismissed the complaint against those accounts **but allowed the government an opportunity to allege further facts to show probable cause for them).** *United States v. Tencer,* 1993 U.S. Dist. LEXIS 1119 *14 (E.D.

57.   That Plaintiffs state  that the use of mails and wires was reasonably contemplated or reasonably foreseeable because of these predicate acts.

58.   That these corporations, subsidiaries, and entities under the direction of those persons who are 'running the show' have been allowed to abuse the victim Plaintiffs to terrorize them in  public. The acts of the Plaintiffs are not criminal acts, and the Plaintiffs have legitimate evidence of their allegations against the Defendant Reservoir Limited Partnership and its coconspirators. Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan  have never presented any evidence to the contrary in any other case to demonstate that they have not violated Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments) and Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).

> Where violations of 18 U.S.C. §§ 1956 and 1957 are alleged this facilitation theory is completely logical. When money from illegal sources is commingled with "lean" money, the illegal funds are cleansed and sheltered form detection. A common method of money laundering is the mixing of legitimate and illegitimate money. The clean funds are used to remove the taint of the money derived form illegal sources. ... Accordingly, the legitimate funds are subject to forfeiture since they facilitate  the concealment of the proceeds of the unlawful activity. [26]

### A.   Conspiracy To Violate Amendment IV Through Fraudulent Misapplication To Bank

59.   That the Plaintiffs' rights to Privacy have been violated the Defendants and an employee of Chevy Chase Bank by Title 18 U.S.C.A. § 657, (relating to theft, embezzlement, or misapplication by bank officer  employee) and this act  has    violated Amendment IV of the Constitution  of the United States.

---

La. August 11, 1993) ( quotes the passage from *Certain Accounts* quoted in the text above), aff'd, 107 F.3d 1120 (5th Cir.1997).

[26] *United States v. All Funds (Hadson Toko Trading Co.),* 804 F. Supp. 444, 447 (E.D.N.Y.1992).

60.    That pursuant to Amendment IV,   *"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated,* yet  Defendant Reservoir Limited Partnership and Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu  have  accessed banking information through Vijay Patel and Dilip Patel  and have confiscated the  Plaintiffs' bank accounts through fraud.

61.    That since this is a free for all attack on bank accounts, the Plaintiffs are requesting that the Attorney General of the United States petition the Honorable Court to grant restitution to the Plaintiffs/victims through *"appropriate relief"* by seizing the bank accounts of Sidney S. Friedman, Francis Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan pursuant to Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments):

**"(4) (Federal receiver.—**
**(A) In general.—***A Court appoint a Federal Receiver, in accordance with subparagraph (B) of this paragraph, to collect, marshal, and take custody, control, and possession of all assets of the Defendant, wherever located, to satisfy a civil judgment under this subsection, a forfeiture judgment under section 981 or 982, or a criminal sentence under section 1957 or subsection (a) of this section, including an order to restitution to any victim of a specified unlawful activity."*

62.    That Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A. have been conspiring with Vijay Patel, Montreal, Canada, who has confessed that he has submitted information by fax, telephone, and/or internet to Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan about the Plaintiffs' personal and business banking accounts and other financial information which Vijay Patel claims he has obtained by threatening other parties with whom the Plaintiffs are related or with whom they have business affiliations in violation of Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence) and Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television).

63.    That  for these criminal acts committed by Defendant Reservoir Limited Partnership with   Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi, Yu Fan, Vijay Patel, and Dilip Patel  there is justifiable restitution due to the Plaintiffs, and, also  to third party business associates who have been damaged through these conspirators' actions pursuant to Title 18 U.S.C.A. § 1963 (Criminal penalties) and Title 18 U.S.C.A. § 981 (Civil forfeiture), and these obligations must be secured with the assets of this Defendant Reservoir Limited Partnership.

64.    That the rules to restore restitution to the Plaintiffs pursuant to Title 18 U.S.C.A. § 983 (General rules for civil forfeiture proceedings) must, according to statute, be monitored to conform to Title 18 U.S.C.A. § 982 (Criminal forfeiture), Title 18 U.S.C.A. § 983 (General rules for civil forfeiture proceedings), Title 18 U.S.C.A. § 986 (Subpoenas for bank records), and Title 18 U.S.C.A. § 1963 (Criminal penalties) in order to grant the appropriate relief.

65.    That should this property not supply the necessary funds to compensate the Plaintiffs' cause of action for relief pursuant to Title 18 U.S.C.A. § 985 (Civil forfeiture of real property), [27] the Plaintiffs assert that this *in rem* action should allow the Plaintiffs to include and attach any cash, monetary instruments in bearer form, funds deposited in an account in a financial institution, or precious metals that Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan might have in their possession or at their disposal pursuant to Title 18 U.S.C.A. § 984 (a)(1)Civil forfeiture of fungible property).

---

[27] Title 18 U.S.C.A. § 985 (c)(1) The Government shall initiate a civil forfeiture action against real property by—
(A) filing a complaint for forfeiture;
(B) posting a notice of the complaint on the property; and
(C) serving notice on the property owner, along with a copy of the complaint.

66. That, therefore, the Plaintiffs state that the bank records of Defendant Reservoir Limited Partnership and Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan must be subpoenaed by the Attorney General of the United States to complete the investigation into the violations of Title 18 U.S.C.A. § 241 (Conspiracy against rights) and Title 18 U.S.C.A. § 242 (Deprivation of rights under color of law), and to provide adequate seizure of these funds which were acquired and commingled through these patterns of racketeering activities.

> *Evidence of a differential between legitimate income and cash outflow is sufficient for a money-laundering conviction, even when the defendant claims income from additional sources.* "[28] *Although the defendant may have untainted income, the fact that expenditures exceed the amount to untainted income provides a reasonable basis for a finding that property is proceeds to support a conviction under § 1956.*[29]

67. That the Plaintiffs assert that their claim for the seizure of the bank accounts of these individuals, enterprises, corporations, legal entities, organizations, or associations-in-fact, is justified pursuant to Title 18 U.S.C.A. § 982 (Criminal forfeiture) and Title 18 U.S.C.A. § 984 (Civil forfeiture of fungible property) as joined with Title 18 U.S.C.A. § 1963 (Criminal penalties).

> The facilitation theory is appropriate in the present case where the government has demonstrated probable cause to believe that [the claimant] established and controlled the Six Accounts, and commingled legitimate and illegitimate funds in these accounts, for the

---

[28] *United States v. Webster*, 960 F.2d 1301, 1308 (5th Cir. 1992) (citing to *United States v. Jackson*, 936 F.2d 832, 839-40 (7th Cir. 1991)). *See also, United States v. Carr*, 25 F.3d 1194, 1203 (3rd Cir. 1994) ($18,364 income shown on tax return but $45,140 in wire transfers to relatives in Columbia during same year.)

[29] See also, *United States v. Heater*, 63 F.3d 311, 319 (4th Cir. 1995) (relying on Webster); *United States v. Puig-Infante*, 19 F.3d 929, 940 (5th Cir.) (relying on Webster) (participation in a continuing drug organization and "minimal legitimate income" during 1986-90 were enough to sustain conviction under ) 1956 (a)(A)(i) for purchasing a car with $3,180 in cash in 1988), cert. denied, 513 U.S. 864 (1994); *United States v. $95,945*, 727 F. Supp. 242, 245 (W.D.N.C. 1989) (claimant for $95,945 in currency had a total of only $16,000 in income over three years), aff'd, 913 F.2d 1106, 1111 (4th Cir. 1990); *United States v. Leola's Plaza*, 814 F.Supp. 468, 475 (W.D.N.C 1993) (claimant who reported only $2,700 income per year and admitted $18,000 a year in personal living expenses during the six years ending with construction of a shopping center worth $300,000), aff'd, 105 F.3d 927, 932 (4th Cir. 1997) (1993 judgment and decision affirmed, but remanded for rent remedy for *Good* violations).

purpose of disguising the nature and source of the proceeds of his green card scheme. ... That the Six Accounts may also contain the proceeds of legitimate income does not change the result. Any legitimate money in the Six Accounts would serve to further disguise the source of the illegitimate funds and to make the proceeds of the green card scheme more difficult to trace, and thereby facilitate [claimant's] money laundering scheme.[30]

## B. Identity Theft

68.     That the  Plaintiffs have been subject to unauthorized search and seizure of not only their  banking information and accounts, but other private and personal information as well. When the applicant gives permission for a credit check to be done before a checking account is opened the authorization does not grant a constant monitoring by other parties of the *"person, house, papers, or effects"* without the further consent of the applicant. Yu Fan obtained a Social Security number through fraudulent means and should be the subject of a full investigation into the violations of this information pursuant to Title 18 U.S.C.A. § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information) and Title 18 U.S.C.A. § 1028A. (Aggravated identity theft).

69.  That any action taken by this Defendant in furtherance of these racketeering activities would be a blatant abrogation of Amendment IV and would nullify the authority of any State over all issues of this cause of action should the Federal statutes  be trampled by State action.

## C.  Basis For Tort  Actions

70.     That this is  a deprivation of Constitutional rights,  civil rights, and personal property which resulted from the  violation of  contract  agreements  performed  pursuant  to  the RESTATEMENT OF THE LAW SECOND - CONTRACTS 2d,  As Adopted and Promulgated by THE  AMERICAN  LAW  INSTITUTE  at  Washington,  D.  C.,    May  17,  1979.  Should  the

---

[30] *United States v. Contents of Account Nos. 208-06070 & 208-06068-1-2*, 847 F. Supp. 329, 334 (S.D.N.Y 1994).

Defendant's property not supply the necessary funds to compensate these Plaintiffs, then other causes of action shall be filed pursuant to RESTATEMENT OF THE LAW (SECOND) –TORTS, As Adopted and Promulgated by THE AMERICAN LAW INSTITUTE at Washington, D. C., May 17, 1979: § 50 § 139,  § 71, § 45, § 87,  § 125, and  § 79.

71.    That, also, a separte lawsuit will be filed pursuant to  § 46, RESTATEMENT OF THE LAW (SECOND) –TORTS,  §§§500-503, and §324, for cruel and unjust punishments which have been inflicted upon the Plaintiffs.

72.    That the Defendant Reservoir Limited Partnership and Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan, in violation of Amendment V and Amendment XIV in conjunction with Title 28 U.S.C. §1983 and §1986, and Restatement of Law (Second) of Torts: § 28, § 284, § 291, § 292, § 430, and § 431, have deprived the Plaintiffs of life, liberty and property.

## D. Specified Unlawful Activities

73.    That Plaintiffs assert that  criminal activities have provided  proceeds for the purchase or lease payments for this property through the association with Sidney S. Friedman, Greg I. Rose, and Weinstock, Friedman & Friedman, P.A.,  and  Title 28 U.S.C.A. § 1956 (a)(1)  forbids financial transactions "*which involve the proceeds of specified unlawful activity.*"[31]

---

[31]  *United States v.  Hawkey*, 148 F.3d 920, 928 (8th Cir. 1998) "proof that the proceeds of the money laundering transaction enabled the defendant to acquire the property is sufficient to warrant forfeiture as property 'traceable to' the offense." The District of Columbia Court has adopted the "but for" test: *United States v. Defries*, 129 F.3d 1293, 1313 (D.C. Cir. 1997)  a corrupt union election case in which the Court of Appeals found that: "but for the elections, which the district court found to be tainted by appellants' racketeering activity, they would not have received their salaries." The Court ordered the appellants to also forfeit the severance pay that they earned as officers of the national as well as the union. 129 F.3d at 1312.

74.     That Plaintiffs assert that 100% concealment of the ownership or control of the property and other assets  by this Defendant is not required for the filing of this equitable lien pursuant to Title 18 U.S.C.A. § 1956(a)(1) and (2). This statute only requires that the property in question be "involved" in the proceeds of a pattern of racketeering activities, not "be"  the proceeds.[32] Plaintiffs have only to prove that some item of property involved in the transaction is a proceed of the specified unlawful activity (SUA). The same banks for the legitimate enterprises also were involved in the illegal pattern of racketeering activities.

> The Fourth Circuit has approved the general proposition that clean money can be used to hide dirty money.  It affirmed a conviction under   § 1956 (a)(1)(B)(i) where an expert for the government testified that the purpose of the transactions was likely to conceal the proceeds of drug trafficking, and "depositing  drug money into an account that contains legitimate income 'lends credence or credibility to the  [drug] money.'"[33] The Fifth and Seventh Circuits have also followed this facilitation theory.[34]

75.     That neither do Plaintiffs have to exclude the possibility that a dollar of tainted money has been put into the transaction, nor prove that a "substantial portion" of laundered funds were SUA proceeds.[35] "Proceeds" from RICO activities consist of various definitions:

> *United States v. Ortiz,* 738 F.Supp. 1394, 1400 (S.D. Fla. 1990). Quoted from      Black's Law Dictionary 1084 (5[th] ed. 1979): "Issues; income, yield; receipts; produce; money or articles or other thing of value arising or      obtained by the sale of property. Proceeds does not necessarily mean  only cash or money. That which results, proceeds, or accrues from some   possession or transaction. The funds received from disposition of assets   or    from the issue of securities." *Id.* 738 F.Supp at 1400.

---

[32] *United States v. Sokolow,* 91 F.3d 396, 409 (3rd Cir. 1996).
[33]   *United States v. Barber,* 80 F. 3d 964, 970 (4th Cir. 1996), as quoted in <u>Federal Money Laundering: Crimes and Forfeiture,</u> by  B. Frederic Williams, Jr. and Frank D. Whitney (1999).
[34]  *United States v. Trost,* 152 F.3d 715, 721 (7th Cir. 1998) ("Money does not need to be derived from the crime to be forfeited.  ... it can be forfeited if it is involved in the crime.  Sometimes, in fact, legitimate funds might be used to disguise illegitimate funds.") (Citation omitted); *United States v. Tencer,* 107 F.3d 1120, 1134-35 (5th Cir. 1997). *Id.,* n. 29.
[35] *United States v. Rodriquez,* 53 F.3d 1439, 1447 n.13 (7th Cir. 1995) (Purchase involved proceeds even though only $1,000 of $17,000 payment was tainted).

76.    That Plaintiffs state that a forfeiture "attaches to the thing itself, not to any article for which the thing may be exchanged."[36] Plaintiffs allege that 100% of the property at Executive Centre, 4 Reservoir Circle, Baltimore, Maryland 21208-7301 which facilitates the previous and ongoing RICO activities is subject to lien and forfeiture under Title 18 U.S.C.A. § 1956 (a) (1) in correlation to Title 18 U.S.C.A. § 1964 since the proceeds[37] for the purchase or mortgage payments for the property were and are still being  acquired through a pattern of racketeering activities which support the purchase or mortgage payments  for said property through a pattern of racketeering activities which affect, directly and indirectly, interstate and foreign commerce.

77.    That Plaintiffs further assert that part of the proceeds in question were acquired by Yelin Shi an Yu Fan  during the period when there was a business association between the parties. Plaintiffs state that Yelin Shi and Yu Fan commingled the legitimate funds derived from Plaintiffs' legal business associations with those proceeds Shi and Fan obtained through a pattern of racketeering activities, and then Shi and Fan gave part of those proceeds to Sidney S. Friedman, Greg I. Rose,  Weinstock, and Friedman & Friedman, P.A., who then gave part of those commingled funds to Defendant Reservoir Limited Partnership.

78.    That the circle of money laundering is complete, and the conspiracy to commit this pattern of racketeering activities is broad and complete pursuant to Title 18 U.S.C.A. § 241 (Conspiracy against rights).   The Defendant Reservoir Limited Partnership has used the Plaintiffs' legally derived proceeds, which were confiscated by Sidney S. Friedman, Greg I. Rose,  Weinstock,

---

[36] *United States v. Grundy & Thornburgh,* 7 U.S. (3 Cranch) 337, (1806), at 354.

[37] *Phelps v. Harris,* 101 U.S. 370, 380 (1979).  This case held, that "proceeds are not necessarily money. This is also a word of great generality. Taking the words in their ordinary sense, a general power to dispose of land or real estate and to take in return therefore such proceeds as one thinks best, will include the power of disposing of them in exchange for other lands. It would be a disposal of the lands parted with; and the lands received would be the proceeds."

Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, by furnishing them an office or facility from which they, the Defendant and the other conspirators have waged a war against the Plaintiffs with Plaintiffs' own money through this pattern of racketeering activities in violation of Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments).

79.  That because of this conspiracy with Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan, Defendant is equally liable to these Plaintiffs for furnishing the facilities to commit the crimes pursuant to Title 18 U.S.C.A. § 1963 (Criminal penalties) and Title 18 U.S.C.A. § 981 (Civil forfeiture). And Title 18 U.S.C.A. § 982 (Criminal forfeiture).

> That *"property used as a place to conduct a fraudulent business, direct its affairs and financial transactions, to impress potential investment victims to provide additional funds to be laundered, to entertain potential victims and co-conspirators, and similar activities, are "involved in" the money laundering activities that are integral to the existence and operation of the fraudulent business."* [38]

80.  That although there is nothing to be resolved as to the interpretation of the term "involved in." The court in *South Side Finance*[39] denied a motion to dismiss a complaint by finding that a used car business and all of its assets were forfeitable for facilitation of money laundering violations. Even though the charges were for drug transactions pursuant to Title 18 U.S.C.A. § 881, the court did not rely upon the drug statutes for the forfeiture—only Title 18 U.S.C.A. § 981 (Civil forfeiture)(a)(1)(A).

---

[38] *United States v. One Lot Jewelry, One 1987 Mercedes Benz,* 749 F. Supp. 118, 123 (W.D. N.C. 1990); *United States v. Rivera,* 884 F.2d 544 (11th Cir. 1989); *United States v. One 197 Lincoln Mark V Coupe,* 643 F.2d 154, 157 (3rd Cir. 1981); *Whitby v. United States,* 454 U.S. 818 (1981). as quoted in Federal Money Laundering: Crimes and Forfeiture, by B. Frederic Williams, Jr. and Frank D. Whitney (1999).

[39] *United States v. South Side Finance, Inc.,* 755 F. Supp. 791 (N.D. Ill.1991).

81.  That the Eastern District of Virginia followed *$477,048, Account No. 01-0-71417,* and *South Side Finance,* and held that a criminal money laundering forfeiture could include the entire business with all its assets and entire bank accounts, including portions which were not traceable to criminal proceeds, and summed up that ***"[i]n sum, any property involved in illegal activity may be said to 'facilitate' the criminal activity, and thereby causes such property to be forfeitable."*** [40] **This includes any party involved in violations of Title 18 U.S.C.A. § 241 (Conspiracy against rights) and § 242 (Deprivation of rights under color of law). There is no immunity for fraud.**

82.  That the Eastern District of Michigan found that *$477,048 "persuasive and [held] that the government may use a facilitation theory under 18 U.S.C. § 981 (a)(1)(A) in the instant forfeiture action."* [41]

83.  That the Middle District of North Carolina found probable cause for a seizure and forfeiture based on the evidence that a trucking business had facilitated a drug money laundering pattern of activities. The Court refused a preliminary injunction to release the property from seizure by finding that although it would ordinarily raise a presumption of irreparable harm, in this case the Court found that the trucking company intentionally kept incomplete and erroneous records of its financial affairs, had unusual currency transactions, and had run the trucking company as a sham for the drug dealings. [42]

84.  That Plaintiffs maintain that this Defendant is involved in the sort of scams detailed in the aforementioned precedents which have facilitated the pattern of racketeering activities by quite literally providing a roof, and the wires, under which these money laundering schemes are

---

[40] *United States v. Swank Corp.,* 797 F. Supp. 497 500 (E.D. Va. 1992).
[41] *United States v. All Inventories of Bus. Known as Khalife Bros. Jewelry,* 806 F. Supp. 648, 650 (E.D. Mich. 1992).
[42] *United States v. Any & All Assets of Shane Co.,* 816 F. Supp. 389 (M.D.M.C. 1991).

conducted and controlled in violation of Title 18 U.S.C.A. § 1962(b) and (c) (Prohibited activities) and Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television).

85.    That for any violation under Title 18 U.S.C.A. § 1962 (Prohibited activities) and Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television) the Plaintiffs are permitted to ask the Attorney General to authorize these forfeitures pursuant to Title 18 U.S.C.A. § 1963(d)(1)(A) (Criminal penalties) and Title 18 U.S.C.A. § 981(a)(1)(D)(vi) (Civil forfeiture).

86.    That Congress has defined the term of proceeds more simply as the core of the statutory provisions in § 1962 and § 1963:[43] all property obtained through criminal or predicate acts which constitute patterns of racketeering activities, or which the criminal would not have had EXCEPT FOR the gains from a pattern of racketeering activities, either directly or indirectly, are proceeds of the crimes. Congress gave this a very broad interpretation because they were worried that white collar criminals would secret away the proceeds and benefit from these patterns of racketeering activities which is <u>exactly</u> what this Defendant and the other related conspiratorial participants have done in this case through violations of the Patriot Act. There is no statute of limitation on this type of fraud.

87.    That "income" or "profits" need not be proved for convictions of RICO acts. The term "proceeds" was used in the RICO statutes instead of "profits" in order: ***to alleviate the***

---

[43] § 1963(a). Some defendants, as the "upper echelon" in the pattern of racketeering activities, may receive the gross of all of the illegal proceeds; the "middle management" may receive only a share of the "profits, interest, or dividends" from the gross which might have been invested in otherwise legitimate enterprises, either directly or indirectly; while the "lower ranks" may receive only wages, tips, or fees for their services. All the participants in the three rungs of the RICO ladder may then distribute their proceeds to their spouses and other family members in order to launder the funds in legitimate functions or businesses. Therefore, this statute was enacted to include and incriminate all participants, *and* their chosen recipients, so that  the intention of Congress to catch  even the "smallest fish" could be accomplished.

*unreasonable burden on the government of proving net profits.*" S. Rep.No. 98-225, 1984 USCCAN 3182, 3394.

88.     That the violation of the money laundering statutes, and the other crimes committed which affected and violated the Plaintiffs' right to do business, were acts committed by the Defendant in an attempt to regulate economic activity through the commission of a pattern of racketeering activities which affect, directly and indirectly, interstate and foreign commerce.[44]

89.     That the intent of Congress in enacting the RICO laws was to protect the economic health of not only the national economy, but anything which affected interstate and foreign commerce, the tax system, and common everyday business practices from the infiltration of criminal elements and their organized illegal acts in otherwise legitimate businesses.

*E. Restatement Of Restitution*

90.     That the Defendants have conspired through their actions before the RICO Complaint, Case Number: 1:07CV1625, was commenced and afterwards during that case in violation of Title 18 U.S.C.A. § 1962 (b) and (c) deprive the Plaintiffs of their right to do business in interstate and foreign commerce, and that deprivation has lead to a loss of business which would have amounted to the sum demanded if the Plaintiffs had been left to continue their business ventures and had had the opportunity to reinvest the profits. This concept is a basic premise under Restatement (Second) of Restitution, Quasi Contracts, and Constructive Trusts, § 202(c):

> If the property so acquired is or becomes more valuable than the property used in acquiring it, the profit thus made by the wrongdoer cannot be retained by him; the person

---

[44] "[u]nlike § 922 (q), § 1956 has everything 'to do with commerce.' *Lopez*, 514 U.S. at 561. Money laundering is a quintessential economic activity. Indeed, it is difficult to imagine a more obviously commercial activity than engaging in financial transactions involving the profits of unlawful activity. This is particularly so where the intent of the transaction is to conceal the source of those profits or to promote the unlawful activity and thereby yield even greater rewards." *United States v. Goodwin*, 141 F.3d 394, 398 (2d Cir. 1997).

whose property was used in making the profit is entitled to it. The result, it is true, is that the claimant obtains more than the amount of which he was deprived, more than restitution for his loss; he is in a better position than that in which he would have been if no wrong been done to him. Nevertheless, since the profit is made from his property, it is just that he should have the profit rather than that the wrongdoer should keep it.

91.    That Plaintiffs are requesting $9,292,000.00 from Defendants Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A.    in their RICO Complaint due to the interference by these Defendants and their fellow party members which affected the Plaintiffs' business in the United States, and have prevented the Plaintiffs' company from obtaining important and vital contracts in the United States and in foreign countries.

92.    That the revenue from these contracts was lost because: 1) the Plaintiffs' failure to meet deadlines to perform the obligations for the completion of the contracts; 2) the interest was lost from investments of these substantial profits; and 3) the future business was lost due to Plaintiffs' failure to perform on the early contracts. These actions amount to the Plaintiffs' demanded judgment for damages.

93.    That the result of the threat of violence, seizure through force of theft by conversion render the effect was that the Plaintiffs were discouraged from successfully completing their business ventures. This is a textbook example of a pattern of racketeering activities, direct and indirect, which has affected interstate and foreign commerce in violation of Title 18 U.S.C.A. § 1962 (b), (c), and (d) (Prohibited activities).

94.    That the Plaintiffs aver that these revenues, for both their businesses, if invested in the company for further expansion would have amounted to far greater potential than the original amount projected. But the Plaintiffs' failure to perform tainted the character and good name of the Plaintiffs and their company, Petroleum Financial Services Corporation, and this failure caused the loss of future immediate contracts for both concerns because of this lack of specific performance.

95.    That Plaintiffs were forced to file this Complaint, and clear their names in the business world in order to bring back the confidence to the clients that they could perform future contracts. As it is, a major agriculture conglomerate has threatened to sue because of the actions of these Defendants. This loss of respect and confidence will be far more difficult to reestablish than to establish, and has lead to losses of time and money to mend these business associations.[45]

96.    That these actions have escalated the amount of damages requested in the original Complaint against Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan to the continuous and increasing pattern of racketeering activities which have prevented the Plaintiffs and other businesses associates form conducting their interstate and foreign commerce. The pattern of racketeering activities so described in this Complaint affects the commerce of the United States with a rippling affect to the disadvantage of the American consumers as a whole, not just the Plaintiffs.

*F. Rico Act*

97. That Defendants, directly or indirectly, affected the control of the fate of the Plaintiffs' credibility to do business. The actions of these Defendants and their felonious reports, libel and

---

[45] "It should also be remarked, before proceeding with the discussion, that when a contract has been partly performed by the plaintiff, and the defendant has received and enjoys the benefits thereof, and the plaintiff would be virtually remediless unless the contract were enforced, the court, from the plainest considerations of equity and common justice, does not regard with favor any objections raised by the defendant merely on the ground of incompleteness or uncertainty of the agreement. Even if the agreement be incomplete, the court will then, in furtherance of justice and to prevent a most inequitable result, decree a performance of its terms as far as possible, although perhaps with compensation or allowance. In fact, as has been shown in chapter 1, one ground of the equitable jurisdiction to decree a specific performance is the incompleteness of the contract, which would prevent an action at law, but which exists to such a limited extent and under such circumstances that a refusal to grant any relief would be plainly inequitable." Pomery's Specific Performance, § 145.

slanders, which have  affected the Plaintiffs ability to do business have irreparably damaged the Plaintiffs, other individual victims, and the Plaintiffs' business  in this country.

98.    That extortion, fraud, and violent acts which have been committed by Defendant Sidney S. Friedman and Frances S. Friedman are direct criminal acts pursuant to Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence).

*F. Espionage  And Treason*

99.   That the money laundering conspiracy of these Defendants is commingled with the Canadian Defendants in Case Number 1:07CV1802, *Samuel K. Jacobs, et al, v. Vijay Patel, et al*, which was filed in this same  United States District Court for the District of Columbia on October 5, 2007, on alleged RICO violations and threats against the United States in violation of Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries) .

101.    That this attempt to give aid and comfort to those alleged to have been named as conspirators and business partners with a 'Specially Designated Global Terrorist' under Executive Order 13224,[46] otherwise known as an Enemy of the United States and who violated Title 18 U.S.C.A. § 793 (Gathering, transmitting, or losing defense information) and §794 (Gathering or delivering defense information to aid foreign government)  are also  money laundering violations pursuant to Title 18 U.S.C.A. § 1956 (c)(7)(D) (Laundering of monetary instruments).

102.   That these Defendants have laundered illegal funds obtained through treasonous activities by Al Qaeda  agents placed in the United States, and other countries, and have thus contributed to the internal overthrow of this constitutional form of Government with their aid and

---

[46]   "U.S. DESIGNATES DAWOOD IBRAHIM AS TERRORIST SUPPORTER," FROM THE OFFICE OF PUBLIC AFFAIRS, United States Treasury, October 16, 2003; FACT SHEET, www.usembassy.it/file2003.

comfort to the advantage of a foreign nation and the injury to the United States in violation of Article III, Section 3 of the Constitution of the United States.

## VII.  EXPEDITION OF ACTIONS PURSUANT TO TITLE 18 U.S.C.A. § 1966

103.    That the Plaintiffs respectfully request  that the Attorney General of the United States investigate the actions of the Defendant Reservoir Limited Partnership with Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan  for crimes against these American victims which is of general interest to the American public pursuant to Title 18 U.S.C.A. § 1966 (Expedition of actions) and Title 18 U.S.C.A. § 242 (Deprivation of rights under color of law) in three courts.

104.    That  the activities are hidden deep within the legitimate business structure in violation of Title 18 U.S.C.A. § 1962 ( Prohibited activities), Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments), and Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).

105.    That the Defendant Reservoir Limited Partnership  has committed and is still committing true criminal predicate and overt acts by involving itself with the activities of Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan.

106.    That Title 28 U.S.C.A. § 1956  does not compel the victims, or the individual Defendant, to have accurate knowledge of the events and actions which are suspected criminal activities, only that they think they know that these acts have been committed.[47] **The Fifth**

---

[47] The intent of Congress as stated in a Senate report, S. Rep. 99-433, at 11,  explained:

[I]n order to fall within the section, the participant need not know that the property involved in the transaction represents the proceeds of "specified unlawful activity." He or she need only know that it represents the proceeds of some form of unlawful activity. This distinction is drawn in order to prevent a defendant from escaping conviction by merely alleging that he or has

Amendment does not prevent the Government from forcing the production of documents and testimony, and if refused, the Government can force forfeiture of property.

107.    That the intent of Congress was represented by Rep. S. Clay Shaw, Jr. during discussions while preparing the House Judiciary Committee Report H.Rep., 99-855 at 13, and he stated:

> I am sick and tired of watching people sit back and say, 'I am not part of the problem, I am not committing the crime, and , therefore, my hands are clean even though I know the money is dirty I am handling.' The only way we will get at this problem is to let the whole community, the whole        population, know they are part of the problem and they could very well be convicted of it if they knowingly take these funds. . . .

108.    That these RICO violations, forfeitures, and fines jeopardize the Plaintiffs' standing to collect the money owed to them for these violations against them personally until the Government has determined what amount is due for the Defendant's criminal acts, and this Equitable Lien is essential in order to insure the Plaintiffs' right to these monetary claims pursuant to Title 18 U.S.C.A. § 1964 (c) (Civil remedies) and § 1963(f) (Criminal penalties):

**"Following the seizure of property ordered forfeited under this section, the Attorney General shall direct the disposition of the property by sale or any other commercially feasible means, making due provision for the rights of any innocent persons."**

## VIII. OVERT ACTS

109.    That the Defendant Reservoir Limited Partnership and others so named in this Complaint and Case Number: 1:07cv1625 are knowledgeable of these crimes committed as so stated in this Complaint, and have benefited from these activities.

---

thought the property involved represented the proceeds of a crime not covered in the term "specified unlawful activity."

110.    That under Title 18 U.S.C. § 1962 (d), the majority of the courts agree that a person associated with a defendant in a RICO enterprise need not herself be personally or directly involved in the commission of the predicate acts as long as that person agrees to the commission of those predicate acts by another person, <u>or benefits from the commission of those acts</u>.

111.    That, these predicate and overt acts have contributed to the overall success and benefits enjoyed by all of the participants in the enterprises.

## IX.  CONCLUSION

112.    That by reason of the allegations, facts, and evidence contained this 'Complaint For Equitable Lien Upon Real Property,' Plaintiffs' rights and equities in connection with the premises in question are prior, superior and paramount to any rights or equities which any other party has or may possess. The *in rem* judgment is the strongest example of absolute title when one compares possession and legal ownership:

> One fact which has this effect is first possession. The captor of wild animals, or the taker of fish from the ocean, has not merely possession, but a title good against all the world. But the most common mode of getting an original and independent title is by certain proceedings, in court or out of it, adverse to all the world. At one extreme of these is the proceeding *in rem* of the admiralty, which conclusively disposes of the property in its power, and, when it sells or condemns it, does not deal with this or that man's title, but gives a new title paramount to all previous interests, whatsoever they may be.[48]

113.    That Plaintiffs state that a judgment for this 'Complaint For An Equitable Lien on Real Property' not be deemed a restraint upon Plaintiffs and others for further actions pursuant to separate tort actions for damages resulting from defamation of character, invasion of privacy, libel, and slander.

---

[48] THE COMMON LAW, by Oliver Wendell Holmes, Jr., 245 (34th printing 1938).

114.    That Plaintiffs state that a judgment for this 'Complaint For An Equitable Lien on Real Property' not be deemed a restraint upon Plaintiffs and others for further actions for damages pursuant to violations of the Sherman-Antitrust Act and other antitrust laws.

115.    That the acts of Defendant Reservoir Limited Partnership and Sidney S. Friedman, Greg I. Rose,  Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan  have committed overt acts to deny the rights of these Citizens to be secure against unreasonable search and seizure pursuant to Amendment IV of the Constitution of the United States.

116.    That the actions by the Defendant to accept funds from these criminal RICO enterprises for payment of mortgages and other fees constitutes illegal search and seizure of the person and property of the Citizen Plaintiffs without probable cause and without a Warrant issued upon Oath or affirmation because the funds were acquired through fraud and pattern of RICO activities.

117.    That Defendants' actions threats and attempts have thus denied the Plaintiffs  the right to  life, liberty, and property without due process of the law in violation of Amendment V of the Constitution of the United States.

118.    That Plaintiffs state that a judgment for this 'Complaint For An Equitable Lien on Real Property' not be deemed a restraint for further actions upon Plaintiffs and  others  pursuant to other liens that may be filed against other properties owned or leased by the individual or corporate Defendants, their heirs, or appointees.

119.    That Plaintiffs state that a judgment for this 'Complaint For An Equitable Lien on Real Property' not be deemed a restraint on Plaintiffs and others for further actions pursuant to violations of the laws governing the Securities Exchange Commission, if applicable.

120.    That Plaintiffs state that a judgment for this 'Complaint For An Equitable Lien on Real Property' not be deemed a restraint upon Plaintiffs and others for further actions for damages for civil rights violations pursuant to Title 18 U.S.C.A. § 1956 (c)(7)(F).

## X.    PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray:

A.    That the Court declare the right and other legal relations of the Plaintiffs and the Defendants created by reason of the written instrument of the 'Complaint For Conspiracy Under Racketeering Influenced Racketeering Act (RICO)' dated  October 12, 2007:

    (a)  Incidental damages in the sum of  at least $9,292,000.00 Dollars;

    (b)  If specific performance is not granted, judgment against said Defendants in the sum of $12,000,000.00 Dollars; and,

    (c)  For the costs and disbursements of this action.

WHEREFORE  Plaintiffs pray  judgment:

B.    That in the event that this Court declare that these written instruments constitute a binding and enforceable agreement between the Plaintiffs and the Defendant, that this Court order and direct the Defendant to account to the Plaintiffs and to pay the Plaintiffs for negligence, damages, and costs.

C.    That the Defendant, and other owners of said property not so mentioned or known in this Complaint,  be restrained by injunction from appropriating, selling or otherwise disposing of or in anywise interfering with said mortgaged property, if it is mortgaged.

D.    That if the property is mortgaged, the Court make an order appointing a Federal Receiver to hold the said mortgaged property and preserve the same, to answer to the lien of said

mortgage, and for such other and further relief as to this court may seem just in the premises, together with the costs of this action.

E.    That the Court issue a decree ruling that the liens of the judgments above describe a first lien upon the real property aforesaid, and ordering a sale of said property at public auction and directing that the proceeds of the sale, after deducting therefrom all costs of the sale, be applied to the payment of the Plaintiffs' liens above described, and that the Plaintiff or any of the Defendant be allowed to become purchasers at such sale, and that the Defendant be required to deliver the possession to the purchaser at said sale on the production of the deed therefor, and also that the Defendants, if there are more than one, and each of them, or any of them, subsequent to the commencement of this action, and all persons having liens upon or conveyances to the property subsequent to the commencement of this action be forever foreclosed of and from all right, title, and interest in said property, and the Plaintiffs have such other and further relief as the court shall seem proper in the premises.

F.    That no protective orders be issued against the said property.

WHEREFORE Plaintiffs further pray:

G.    That the Court direct any further actions and orders against the Defendants as it may deem appropriate, but not known to the plaintiffs as of filing of this complaint, pursuant to Title 28 U.S.C. § 1651 and § 1361; and,

H.    That the right to amend this complaint be preserved upon information and evidence to be obtained which will affect the outcome of this litigation upon approval of the Court after responsive pleadings have been filed.

## XI.  TRIAL  BY  JURY

**That Plaintiffs demand a trial by jury pursuant to Amendment VII of the Constitution of the United States and  Federal Rules of Civil Procedure Rule 38 (b).** Right to trial by jury in a civil RICO case exists because the Supreme Court of the United States has long upheld this right pursuant to the antitrust laws and precedents which carry such a right.    *Fleitman v. Welsbach St. Lighting Co.,*  240 U.S. 27  (1916 ) (Holmes, J.).   The  right  to trial by jury is  also derived  from § 1964 (c).

Dated this 14th  day of  November, 2007.

Respectfully submitted,

Samuel K. Jacobs

Nancy Heckerman

OFFICES OF SAMUEL K. JACOBS
2300 M Street NW,  Suite 838
Washington, D.C. 20037
Telephone: 202-416-1753
E-Mail:sjnhjacobs@msn.com

RECEIVED

OCT 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SAMUEL K. JACOBS
  2300 M Street NW, Suite 838
Washington, D.C. 20037, and,
NANCY M. HECKERMAN
  2300 M Street NW, Suite 838
Washington, D.C. 20037
  PLAINTIFFS,
    v.
SIDNEY S. FRIEDMAN,
  Executive Centre
  4 Reservoir Circle
  Baltimore, Maryland 21208-7301;
GREG I. ROSE,
  Executive Centre
  4 Reservoir Circle
  Baltimore, Maryland 21208-7301;
WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.
  Executive Centre
  4 Reservoir Circle
  Baltimore, Maryland 21208-7301;
YELIN SHI
  12922 River Road
  Potomac, Maryland 20854; and,
YU FAN
  12922 River Road
  Potomac, Maryland 20854
  DEFENDANTS.

CASE NO.: 1:07-cv-01625

HONORABLE JUDGE:
REGGIE B. WALTON

*AMENDED*
COMPLAINT FOR CONSPIRACY
UNDER RACKETEERING
INFLUENCED AND CORRUPT
ORGAINIZATIONS ACT (RICO)

JURY TRIAL DEMANDED
Amendment VII & FRCP RULE 38

07 2058

FILED

NOV 1 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## AMENDED COMPLAINT FOR CONSPIRACY UNDER

## RACKETEERING INFLUENCED ACT AND CORRUPT ORGANIZATIONS ACT (RICO)

COMES NOW the Plaintiffs, Samuel K. Jacobs and Nancy Heckerman, in and for the

United States District Court For The District of Columbia upon their oaths and affirmations,

do present that the following Defendants Sidney S. Friedman, Greg I. Rose, Weinstock,

Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, have falsely and fraudulently interfered

EXHIBIT A

with the Commerce of the United States by inducing breach of contract with a third party pursuant to Article I, Section 8, cl. 3 of the Constitution of the United States; committed acts of violence through wire fraud against the Plaintiffs' office staff, and have threatened theft through illegal search and seizure against the property of the Plaintiffs' office associates in violation of Amendment IV; and, have agreed to join those who have threatened to commit acts of domestic and international terrorism in violation of Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries). The Plaintiffs further aver:

A. In addition to the foregoing constitutional violations, said Defendants did conspire to violate Federal statute Title 18 U.S.C.A. § 241 (Conspiracy against rights) by interfering with the Plaintiffs' right to conduct interstate and foreign commerce through the threats against the staff of the Plaintiffs' office by force or violence, and accomplished these goals by threats, intimidation, fraud, and deception in a pattern of racketeering activities through the specific violations of Title 18 U.S.C.A. § 1961 (Definitions) which cites Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence); Title 18 U.S.C.A. § 1956(c)(7)(D) (Laundering of monetary instruments); Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television); Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity); Title 18 U.S.C.A. § 656 (Theft, embezzlement, or misapplication by bank officer or employee); Title 18 U.S.C.A. § 875 (Interstate communications); Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit); Title 18 U.S.C.A. § 894 (Collection of extensions of credit by extortionate means); Defendant Yelin Shi's threats pursuant to Title 18 U.S.C.A. § 1117 (Conspiracy to

murder) and Title 18 U.S.C.A. § 1201 (Kidnapping). All of these aforementioned overt acts were committed pursuant to Title 18 U.S.C.A. § 2331(5)(A) (Definitions).[1]

B.  That Plaintiffs assert that the conspiracy of the Defendants for and by which they committed the RICO predicate and overt acts is an enterprise not in "innocent hands." ALL of the Defendants knew that they were committing deceitful, fraudulent, willfully intentional and severely negligent acts which were meant to inflict harm on the Plaintiffs, their family and their associates through violations of the Consumer Protection Act, the Fair Debt Collection Practices Act, the Extortionate Credit Transactions statutes, the Federal Health Care Act, and through multiple breaches of contract and inducement to breach contract for third party beneficiary contracts.

C.  Therefore, there are other parts to this Complaint which contain tort elements due to the formation of a conspiracy with third parties outside of this jurisdiction and this country, and these new parties, with these Defendants, have formed new RICO enterprises through wire fraud. These new parties named, but not included as defendants in this lawsuit, are being sued for entirely separate and unrelated issues including breach of contract and inducement to breach contracts which were committed in domestic and international commerce.

D.  These third parties will not be included in this lawsuit until it is determined how far Defendants Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan have contributed to these new parties' planned terrorist acts against the

---

[1] Title 18 U.S.C.A. § 2331(5)(A): the term "domestic terrorism" means activities that—
(A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State;

United States. These conspiracies and extraneous RICO enterprises extend far beyond this complaint and the District of Columbia, and include other States and other countries.

That Plaintiffs aver generally that all conditions precedent have been performed or have occurred, and plaintiffs state the following, to-wit:

## I. INTRODUCTION

1. That this Complaint for violations of RICO statutes against Defendants Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, was formed through separate RICO enterprises which involve breached contracts, or induced the breach of contracts, fraud, wire fraud, and perpetrated overt and predicate criminal acts through:

A. PATTERN OF RACKETEERING ACTIVITIES

    *a. Banking Violations*

    *b. Threats of Force and Violence*

    *c. Pattern of Racketeering Activities*

    *d. Banking Violations and Identity Theft.*

    *e. Fraud upon the Court by Defendants' Attorney*

    *f. Continuity of Pattern of Racketeering Activities*

B. INVASION OF PRIVACY

C. THE FORMING OF A CONSPIRACY.

D. FUNDAMENTAL RICO

2. <u>That this brief is not ambiguous or redundant.</u> Each part is necessary because of the time element of RICO pursuant to Title 18 U.S.C.A. § 1961(5) (Definitions); the incidents have occurred over a period of more than five years. The incidents and the parties are commingled through conspiracy in violation of Title 18 U.S.C.A. § 1962 (b), (c), and (d) (Prohibited

activities). Plaintiffs state that they can support their claims with written agreements and witnesses for the accusations and facts presented herein.

> In hearings before the Senate Judiciary Committee, then Assistant Attorney General (now Ninth Circuit Judge) Steven S. Trott stated:
>
> [I]n gauging the overall deterrent value of auxiliary enforcement by private plaintiffs, the deterrence provided by the mere threat of private suits must be added to the deterrence supplied by the suits that are actually filed. Furthermore, as the federal government's enforcement efforts continue to weaken organized crime and dispel the myths of invulnerability that have long surrounded and protected its members, private plaintiffs may become more willing to pursue RICO's attractive civil remedies in organized crime contexts . . . Finally, *civil RICO's utility against continuous large-scale criminality not involving traditional organized crime elements should be kept in mind.* These considerations suggest that private civil RICO enforcement in areas of the organized criminality may have had a greater deterrent impact than is commonly recognized, and .. . might be expected to produce even greater deterrence in the future. *Oversight on Civil RICO Suits: Hearings before the Senate Committee on the Judiciary,* 99th Cong., 1st Sess. 40-41 (1985) (Emphasis added).

3. Therefore, for the convenience of the Honorable Court, the Plaintiffs have attached an Appendix which includes the citations from the Consumer Protection Act upon which the Plaintiffs rely for this complaint.

## II. PARTIES

4.      The names and addresses of the Plaintiffs are as follows:

a. SAMUEL K. JACOBS, (hereafter known as "Jacobs"), and his address is 2300 M Street NW, Suite 800, Washington, D.C. 20037; and,

b. NANCY HECKERMAN, (hereafter known as "Heckerman"),and her address is 2300 M Street NW, Suite 800, Washington, D.C. 20037.

Except where the context is otherwise indicated, reference to "Plaintiffs" refers to each of the named Plaintiffs.

5.      On information and belief, the names and addresses of the defendant corporations and individuals are as follows:

a.   SIDNEY S. FRIEDMAN, Executive Centre,  4 Reservoir Circle, Baltimore, Maryland 21208-7301, has represented Defendants Yelin Shi and Yu Fan for more than  two years in cases which the Plaintiffs have filed against these Defendants;

b.   GREG I. ROSE, Executive Centre,  4 Reservoir Circle, Baltimore, Maryland 21208-7301, is licensed to practice in this State and has previously filed an Appearance in this Court for at least two cases;

c.   WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A., Executive Centre,  4 Reservoir Circle, Baltimore, Maryland 21208-7301, is a professional association which transacts its affairs in the District of Columbia as well as other States through wire and mail;

d.   YELIN SHI, (a.k.a. JACK SHI), individually and jointly, resides at 12922 River Road, Potomac, Maryland 20854, has known the Plaintiffs for over and has a furniture business named "STARLIN INTERIORS" at 9748 Traville Gateway Drive,  Rockville, Maryland 20850. He is the  purported husband of Yu Fan; and,

e.   YU FAN, individually and jointly, resides as 12922 River Road, Potomac, Maryland 20854, and is a registered Real Estate Broker in the District of Columbia, Maryland and Virginia. Some  of the names of her firms are: Nations realty, United Realty, and BMI Realtors. Yu Fan has claimed that she resides, conducts her affairs, or has an agent who transpires her affairs in Washington, D.C.

### III.  JURISDICTION AND VENUE

6.   That the jurisdiction for this cause lies with Article I, § Section 8, cl. 3; Amendment IV; and Amendment V of the Constitution of the United States, and, Title 28 U.S.C.A. § 1331 (Federal Question). Parties may be Citizens of two different countries: Plaintiffs are Citizens of the United States, and the Defendants may be residents or Citizens of the United States.

a. The laws enacted thereof entitled Title 18 U.S.C.A. § 1346 (Definition of "scheme of artifice to defraud") in conjunction with the <u>RESTATEMENT (SECOND) OF RESTITUTION, QUASI CONTRACTS, AND CONSTRUCTIVE TRUSTS</u>, § 202(c);

7. That, furthermore, in conjunction with the aforementioned violations of the Constitution of the United States, the Plaintiffs cite the following statutes which the Defendants are alleged to have violated:

a. Title 18 U.S.C.A. § 241 (Conspiracy against rights);

b. Title 18 U.S.C.A. § 656 (Theft, embezzlement, or misapplication by bank officer or employee);

c. Title 18 U.S.C.A. § 875(b),(c), and (d) (Interstate communications);

d. Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit);

e. Title 18 U.S.C.A. § 894 (Collection of extensions of credit by extortionate means);

f. Title 18 U.S.C.A. § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information);

g. Title 18 U.S.C.A. § 1028A. (Aggravated identity theft);

h. Title 18 U.S.C.A. § 1113 (Attempt to commit murder or manslaughter);

i. Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television);

j. Title 18 U.S.C.A. § 1346 (Definition of "scheme or artifice to defraud");

k. Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence);

l. Title 18 U.S.C.A. §1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises);

m. Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments);

n.  Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived

from specified unlawful activity);

o.  Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity);

p.  Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries);

q.  Title 15 U.S.C.A. § 1692d. (Harassment or abuse); and,

r.  Title 15 U.S.C.A. § 1692e. (False or misleading representations).

8.    That venue is still proper in this district for the review of this Complaint under Title

28 U.S.C.A. § 1391(b) (Venue generally), and the clause in that statute which states: *"except as*

*otherwise as provided by law"*, is  the criteria by which  this Complaint is filed pursuant to Title

18 U.S.C.A. § 1965 (a), (b) and (d) (Venue and process) which designates that a proceeding may

be instituted in  any court in any district (of a United States District Court) wherein a defendant

is known [2] or *"resides, is found, has an agent, or transacts his  affairs"* is pertinent because  all

of the parties have an agent, are found, or transact their affairs in the District of Columbia, and

the main incident as stated in this Complaint occurred in the District of Columbia through  wire

fraud.

9.    That the value in controversy is over $75,000.00 and the parties, or their incorporated

place of business,  are citizens of, or reside in, different states.[3] The Plaintiffs claim damages in

---

[2] FRCvP Rule 65. Injunctive relief.— One fundamentally simplistic but potentially compelling
argument  is that a federal court has inherent power to issue equitable relief, or, alternatively, that
§ 1964(a) of RICO itself provides that the district courts have   *". . .jurisdiction to restrain*
*violations of § 1962 of this chapter.. ."*
[3]   A person has statutory standing if the person has constitutional standing and is within the
plaintiff class the statute creates. *Federal Election Commn. v. National Conservative Political*
*Action Comm.,* 470 U.S. 480, 484-490 (1985).

excess of $2,300,000.00. Trial by Jury requested pursuant to **Amendment VII** of the Constitution of the United States and **Rule 38 of the Federal Rules of Civil Procedure**.

10. That this case has parts which have evolved into a request that a formal investigation be conducted by the Attorney General of the United States pursuant to Title 18 U.S.C.A. § 1963 (f) (Criminal penalties), and Title 18 U.S.C.A. § 1966 (Expedition of actions) when deemed applicable and feasible by the Attorney General of the United States. *Plaintiffs implore the Department of Justice to open this cause of action for review.*

## IV.  STATEMENT OF FACT

11.  That Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan have formed a conspiracy of enterprises which have initiated a pattern of racketeering activities which transcend the predicate and overt acts so stated in the previous legal actions against Defendants Yelin Shi and Yu Fan. Plaintiffs allege that the actions of all Defendants were induced by economic as well as other motives or actions.

12.  That the Plaintiffs will state the criminal overt acts and RICO predicate acts for which they have knowledge and/or proof, and Plaintiffs will beseech the Attorney General of the United States to initiate a plan for discovery to determine if there are others so similarly situated who could be victims of the RICO enterprises encased within an otherwise legitimate business of a "debt collection" firm named Weinstock, Friedman & Friedman, P.A. and BMI Realtors in order to prove this pattern of racketeering activities.

Congress enacted RICO as Title IX of Organized Crime Control Act of 1970 because it found that 18th and 19th Century jurisprudence was ineffective to combat white-collar crime and fraudulent behavior. The statute's Statement to Findings recognized that organized crime "is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, *fraud,* and corruption," that such activities "weaken the stability of the Nation's economic system, *harm innocent investors and competing organizations,*

COMPLAINT FOR SLANDER, LIBEL AND DEFAMATION OF CHARACTER—Page 9 of 51

interfere with free competition, seriously  burden interstate and foreign commerce, threaten domestic security, and undermine the general welfare of he Nation and its citizens" and that organized crime "continues to grow" because "the sanctions and remedies available to the Government are necessarily limited in scope and impact."  5-42, § 1962: Prohibited Conduct, December, 1992, McGraw-Hill.

13.    That Plaintiffs assert that this specific threat of repetition of fraud against not only these Plaintiffs, but other victims of Defendants Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A. extends indefinitely into the future, and thus, the requisite threat of continuity is supplied.

## *A.  PATTERN OF RACKETEERING ACTIVITIES*

### *a. Banking Violations*

14.  That the Plaintiffs contend that the "debt collection" enterprise of Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A.  have operated against these Plaintiffs as a "protection" service for their clients, Defendants Yelin Shi and Yu Fan, by committing predicate and overt acts for which the original RICO statutes were first enacted in 1934. ("Moreover, there is authority that the crime of threatening to injure is complete as soon as a threat is communicated to a third party, regardless of whether the intended victim ever knows of the plot to injure him." *Beard v. U.S.,* App., 535 A.2d 1373.)

In the often-quoted words of Judge Pratt of the Second Circuit:
When Congress provided severe sanctions, both civil and criminal, for conducting the affairs of an "enterprise" through a "pattern of racketeering activity,"  it provided no exception for businessmen, for white collar workers, for bankers, or for stockbrokers. If the conduct of such people can sometimes fairly be characterized as "garden variety fraud," we can only conclude that by the RICO statute congress has provided an additional means to weed the "garden" of its fraud. . . . It seems almost too obvious to require statement, but fraud is fraud , whether it is committed by a hit man for organized crime or by the president  of a Wall Street brokerage firm. *Furman v. Cirrito,* 741 F.2d 524, 529 (2d Cir 1984), *vacated in part on other grounds sub nom Joel v. Cirrito,* 473 U.S. 922 (1985).

15.    That, furthermore, Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. claim to have thousands of such clients for whom they provide the same measures of "protection." To what extent does this "debt collection" service perform its functions? Do these professionals conduct the same or similar activities which violate the laws of the United States for all of their clients?

16.    That how many other victims have complained of these actions of Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A. to a State Attorney General, the Consumer Protection Agencies, or the Attorney General of the United States? Has an investigation been conducted by any of these Offices to determine how many victims are too intimidated or fearful to report these violent threats which have been perpetrated by these "debt collectors"? This is additional information for which the Plaintiffs will file under the FOIA.

17.    That the Plaintiffs allege that this "debt collection" agency of Defendants Sidney S. Friedman, Greg I. Rose, and Weinstock, Friedman & Friedman, P.A. has used its license as an otherwise legitimate law firm to obtain private information through devious and dubious means about these Plaintiffs which exceeds these Defendants' essential right to zealously defend their clients Yelin Shi and Yu Fan.  Defendant Weinstock, Friedman & Friedman, P.A. has set up this RICO enterprise as an entity separate from the legitimate law firm. The RICO enterprise is in control of the otherwise legitimate law firm and this is a prohibition against the rights of these Plaintiffs pursuant to Title 18 U.S.C.A. § 1962 (b) (Prohibited activities). [4]

---

[4] In the often-quoted words of Judge Pratt of the Second Circuit:
    When Congress provided severe sanctions, both civil and criminal, for conducting the affairs of an "enterprise" through a "pattern of racketeering activity,"  it provided no exception for businessmen, for white collar workers, for bankers, or for stockbrokers. If the conduct of such people can sometimes fairly be characterized as "garden variety fraud," we can only

18. That Plaintiffs assert that the Defendants have used contacts at banking institutions in violation of Title 18 U.S.C.A. § 656 (Theft, embezzlement, or misapplication by bank officer or employee) to obtain information which is, by statute and common law, restricted and confidential personal information in violation of Title 18 U.S.C.A. § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information) and Title 18 U.S.C.A. § 1028A (Aggravated identity theft). These acts are not only criminal, they are an invasion of privacy which will be filed later as a Torts lawsuit.

> Effect will be given to states punishing the extortion of money or other property by threats which, as dependent on the particular statutory provisions, may be general in their nature or may be required to be of certain specified kinds.[5]

19. That Plaintiffs aver that the allegations of identity theft are true because of the previous comments made by Defendants Yelin Shi and Yu Fan about the Plaintiffs' banking relations with Chevy Chase Bank and the use of an employee at that bank to obtain information not only about the Plaintiffs' bank account, but about their physical activities. Defendant Yelin Shi has recited bank account balances, and other activities which could only be obtained through

---

conclude that by the RICO statute congress has provided an additional means to weed the "garden" of its fraud.

It seems almost too obvious to require statement , but fraud is fraud , whether it is committed by a hit man for organized crime or by the president of a Wall Street brokerage firm. Furman v. Cirrito, 741 F.2d 524, 529 (2d Cir 1984), *vacated in part on other grounds sub nom Joel v. Cirrito*, 473 U.S. 922 (1985). Quoted in RICO in Business and Commercial Litigation, by Kevin P. Roddy, Shepard's/McGraw-Hill, Inc., (1995), §5.07 § 1962: PROHIBITED CONDUCT.

[5] *State v. Essex,* 250 N.W. 895, 217 Iowa 157; *People v. Percin,* 47 N.W.2d 29, 330 Mich. 94; *State v. Williams,* 71 S.W.2d 732, 335 Mo. 234.
Validity.
(1) Extortion statute was not unconstitutionally vague insofar as it failed to define "threat," "character," "pecuniary benefit," and "extort"; "threat," "character," and "pecuniary benefit" were all ordinary, everyday words whose meanings were plain to person of normal intelligence and education, and "extort" had established and well recognized meaning. *Stein v. Commonwealth,* 402 S.E.2d 238, 12 Va.App. 65.

the use of the bank's ATM/Debit Card which could only be obtained from a bank employee.

(*"The intended victim of a threat need not be aware of the threat, for the crime is completed when the threat is communicated to a third party."* [6])

### b. Threats of Force and Violence

20.    That Plaintiff Heckerman received a telephone call from the receptionist at her office in Washington, D.C. one day in February, 2007, and was told by the very upset receptionist that this man had called for the Plaintiffs and had started screaming at her, and had threatened to get the Sheriff and come confiscate all of the furniture and equipment in the office. She said the man identified himself as Defendant Sidney S. Friedman and said that he stated that he was an "investigator," and, furthermore, she said he had implied in a rather confused identification that he was from the "Government."    She stated that Sidney S. Friedman did not identify himself as an attorney.

> Where the theory of prosecution is larceny by extortion, proof that the accused compelled or induced another to part with property in instilling fear of future injury is necessary; but larceny by extortion does not require evidence of an actual ability to cause the threatened harm in the threatened manner, only that the person threatened believed that the accused possessed such an ability.[7] However, there is also authority that unless the statute so provides, the person threatened need not actually have been put in fear,[8] it being sufficient if the threat is of such character as might reasonably have that result.[9]

21.    That the receptionist stated that she was calling the Plaintiffs because she was so alarmed with his actions. Although he had called several times before, this time he had become extremely violent and abusive on the telephone. She further stated that she did not think that he

---

[6] *Joiner v. U.S.,* App., 585 A.2d 176.
[7] *People v. Capparelli,* Super., 603 N.Y.S.2d 99, 158 Misc.2d 996.
[8] *People v. Robinson,* 20 P.2d 369, 130 C.A. 664; *People v. Percin,* 47 N.W.2d 29, 330 Mich. 94; *O'Neil v. State,* 296 N.W. 96, 237 Wis. 391, 135 A.L.R. 719.
[9] *People v. Robinson,* 20 P.2d 369, 130 C.A. 664.

was from the Government because as she stated: *"those Government people do not threaten anyone, they just call and identify themselves quite clearly with their names, their department, and their telephone numbers if the person they want to talk to is not there they leave a message. They never scream like that."*

> Statutes frequently provide a punishment for the extortion of money or property through threats of injury to person or property or economic injury and will be given effect in accordance with their terms.[10] Threats of injury at the hands of third parties are punishable under such statutes.[11] It is not necessary that a weapon be used or exhibited in connection with such threats.[12] Such a statute has been construed as intended to include a threat to invade any right for the invasion of which an action in damages would lie for injury to the persons or property.[13] A threat to throw away property is a threat to cause damage to property for purposes of the offense of theft by extortion.[14] Furthermore, the term "property" as used in a statute prohibition injury to the property of another, with intent to extort money, encompasses an interest in a lawsuit.[15]

22. That Plaintiffs state that this is a violation of Title 15 U.S.C.A. § 1692e (False or misleading representations) of the Fair Debt Collection Practices Act.[16] ("Finally, terrorizing over a prolonged period of time is not required."[17]) Plaintiffs Jacobs and Heckerman allege that this is a scheme calculated to deceive persons of ordinary prudence and comprehension. Plaintiffs were the "intended victims," and the Plaintiffs, their office staff, the office associates who are not related to the Plaintiffs or the Defendants, were the "actual victims."

23. That the receptionist stated that he had called several times before and he had talked to another staff member, and the office staff had put him through to Plaintiffs' voice mail.

---

[10] *People v. Hopkins,* 233 P.2d 948, 105 C.A.2d 708; *Peterson v. Mayo,* 65 So.2d 48.
[11] *Bush v. State,* 168 P. 508, 19 Ariz. 195.
[12] *Burleson v. State,* 96 S.W.2d 785, 131 Tex.Cr. 76.
[13] *Meek v. State,* 185 N.E. 899, 205 Ind. 102.
[14] *State v. Davis,* 839 P.2d 283, 115 Or.App. 711.
[15] *State v. Manthey,* App.., 487 N.W.2d 44, 169 Wis.2d 673, review denied 491 N.W.2d 768.
[16] Title 15 U.S.C.A. § 1692e (False or misleading representations). See *Appendix for Complaint.*
[17] *Warren v. State,* 613 S.W.2d 97, 272 Ark. 231.

However, the last few times he had called he had demanded from the other staffer in an increasingly abusive manner that they divulge personal information about the Plaintiffs, and, the two women who work on different floors, had met to discuss the situation since they were both upset with his threats.

> Under one type of statute, the threat need not be made directly to the intended victim, but may be made to his agents or employees.[18]

24. That to say that this interrupted and interfered with the Plaintiffs' business is an understatement since this office associate called Plaintiff Heckerman and her voice was exceedingly distressed that these Defendants would appear one day and commit some acts of violence against the other people in the office, and against them personally since they refused to give out any information other than what they had been instructed to tell all callers to Plaintiffs' office.

> Under a statute so providing, the offense is committed whether the threat is to injure the person or property of the individual threatened or that of any relative of his or any member of his family, or of any corporation of which he is an officer, stockholder, employee, or agent.[19] Where contains no limitation with respect to the person as to whom the threat is made or the person from whom it is intended to extort the money, the threat may be made to anyone, either the person to be injured, the person from whom it is intended to extort the money, or to a different person.[20]

25. That the receptionist stated to Plaintiff Heckerman later that his statements did not quite add up when he continued with his other inquiries and then tried to badger her into telling him the whereabouts of the Plaintiffs, and what other business they conducted. The Plaintiffs share the services of the office with other people and businesses with which they are not related other than address.

---

[18] *Lenoir v. State*, 80 A.2d 3, 197 Md. 495.
[19] *People v. Lamm*, 54 N.E. 2d 374, 292 N.Y. 224.
[20] *Commonwealth v. Pelligrini*, 54 N.E. 552, 283 Mass. 300.

It is essential that there be an attempt to extort money or property.[21] It is not essential, however, that it be obtained at the very time the threat is made,[22] and under some statutes the crime may be complete even though no money or property is ever actually obtained.[23]

26. That the receptionist stated that if he was with the Government he would not ask those questions on the telephone since it was her experience that those people had always come to the office and conducted interviews in person when they had questions about other cases.

A criminal extortion statute is applicable to efforts to collect legally enforceable debts.[24] Furthermore, it is not required that the person communicating the threat be attempting to obtain anything for himself;[25] it is sufficient that there be an attempt to obtain something or another.[26]

27. That Plaintiffs state that this is a violation of Title 15 U.S.C.A. § 1692d (Harassment or abuse) of the Fair Debt Collection Practices Act,[27] and Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television). ("It has been held that a demand for a settlement of a civil suit between the parties is not extortion by threats, although the basis for such suit might also be grounds for a criminal charge."[28])

"Racketeering," from the standpoint of coercion, usually takes the form of compelling, by the use of threats to person or property, a person to do or abstain from doing an act which such other person has the legal right to do or abstain from doing.[29]

28. That after the call from the receptionist, Plaintiff Nancy Heckerman immediately called Defendant Greg I. Rose at Defendants Weinstock, Friedman & Friedman, P.A. since he was the attorney of record in a case against Defendants Yelin Shi and Yu Fan. Plaintiff was

---

[21] *People v. Robinson*, 20 P.2d 369, 130 C.A. 664
[22] *Burleson v. State*, 96 S.W.2d 785, 131 Tex.Cr. 76.
[23] *O'Neil v. State*, 296 N.W. 96, 237 Wis. 391, 135 A.L.R. 719.
[24] *People v. Rosenberg*, 572 P.2d 1211, 194 Colo. 423.
[25] *State v Taylor*, 632 P.2d 892, 30 Wash.App. 89, review denied 96 Wash.2d 1012.
[26] *State v Taylor*, 632 P.2d 892, 30 Wash.App. 89, review denied 96 Wash.2d 1012.
[27] Title 15 U.S.C.A. § 1692d (Harassment or abuse). See *Appendix for Complaint.*
[28] *McMillen v. State*, 60 Ind. 216.
[29] *U.S. v. McGlone*, D.C.Pa., 19 F.Supp. 285.

informed that Greg I. Rose did not call her, that he was no longer handling the case, and that the telephone calls had been made by Defendant Sidney Friedman. She asked to be transferred to him and was told he was not there. Plaintiffs are still waiting for his return call.

29. That the Defendant Sidney S. Friedman, and other representatives of Weinstock, Friedman & Friedman, P.A., after harassing the staff at the Plaintiffs' office and making multiple threatening telephone calls to this staff, have affected the Plaintiffs' business and reputation at their own office and this is an invasion of privacy which is an unWarranted search and seizure of Plaintiffs' persons, papers, and effects without Oath and affirmation in violation of Amendment IV, and there is no probable cause for which these Defendants have a justifiable defense.

30. That the Defendants' acts are violations of Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit) and Title 18 U.S.C.A. § 894 (Collection of extensions of credit by extortionate means). Defendants Yelin Shi and Yu Fan understood when they hired Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A. that they would use whatever means possible, even violence, to obtain their goals in debt collection. Where is a sworn statement, in writing, that the debt collector would not use violence to obtain their goals?

> *Collection of extensions of credit by extortionate means.*
> Under a statute, the use of any extortionate means to collect any extensions of credit or to punish any person for the nonrepayment thereof is a criminal offense.[30] In order to convict for collection of extensions of credit by extortionate means the state must prove not only that the creditor knowingly and voluntarily participated in act constituting the offense, but it must also prove that the creditor was aware that his participation was threatening to the debtor.[31]

31. That these two women are so afraid of this man that they do not want to sign their names to an Affidavit since they are concerned that the Defendants might retaliate or attack

---

[30] *State v. Frustino*, App., 689 P.2d 547, 142 Ariz. 288.
[31] *State v. Frustino*, App., 689 P.2d 547, 142 Ariz. 288.

them in some way for testifying against him. However, they are willing to give statements to a person from the Office of the Attorney General if their names can be withheld from these Defendants and their other associates.

> Statute defining offense of retaliation against prospective witness seeks to encourage citizen's participation without fear of retribution in reporting criminal activities, testifying in official proceedings, or cooperation with government in criminal investigation. *Morrow v. State,* Cr.App., 862 S.W.2d 612.

32. That Plaintiffs aver that Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. and their other associates, even if they are nothing but "debt collectors" as stated on their stationary, have no legal, ethical or moral justification for this type of wire fraud, consumer protection act violations, invasion of privacy, and attempted identity theft. These actions violate the original criminal RICO statutes initiated in the 1930's which were passed to curtail extortion and protection racketeers.

33. That Plaintiffs aver that these criminal offenders who have committed the most base of RICO criminal acts are the Defendants who are the licensed attorneys who know better than to violate the laws.[32] The Defendant law firm, Weinstock, Friedman & Friedman, P.A., is a RICO Defendant[33] conducting a separate RICO enterprise which is operating within a Professional Association to commit a plethora of violations of the Consumer Protection Act,

---

[32] *Gramercy 222 Residents Corp v. Gramercy Realty Assocs,* 591 F. Supp. 1408, 1412 (SDNY 1984) (upholding § 1962 (c) claims against individual defendants who were partners in architectural firm whose report was included in cooperative's selling prospectus).

[33] By naming Imrex as a defendant but not as the enterprise, Sedima avoided implicating the enterprise-defendant distinction question. Liability may be imposed only on the culpable "person," not on the enterprise. 1962(c).

The majority decisions focus on section 1962(c)'s language, concluding (as the Seventh Circuit put it) that a person cannot be "employed by or associated with itself."

Fair Debt Collection Practices Act, and Equal Opportunity Act pursuant to Title 18 U.S.C.A. § 1964 (Civil remedies) upon which this complaint is filed.[34]

> In *Sedima*, the Supreme Court also stated that "if Congress" liberal-construction mandate is to be applied anywhere, it is in § 1964, where RICO's remedial purposes are most evident." 473 U.S. 491 n. 10.

34. That Plaintiffs allege that these Consumer Protection Act violations were committed through the RICO enterprises' generation of a pattern of racketeering activities which has a continuity which is evident in this lawsuit. The Plaintiffs are not naïve enough to believe that this association of "debt collectors" has limited itself to just these Plaintiffs.[35] The staff is too large, and the arrogance of the actors denotes that this is a typical manner of operation for these Defendants. ("to be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *United States v. Adams,* 759 F.2d 1099 (3rd Cir), cert. denied, 474 U.S. 906, 971 (1985)).

35. That Sidney S. Friedman and Greg I. Rose of Weinstock, Friedman & Friedman, P.A., stated to Plaintiffs that they have "thousands of clients" who sign up for their "legal" protection services for a yearly fee. At the Pre-Trial Hearing Defendant Sidney S. Friedman told Plaintiffs that this would be the first time that he had met his clients Defendants Yelin Shi and Yu Fan and he had just reviewed the facts of the case.

---

[34] The Supreme Court has used RICO's Liberal Construction Clause to interpret the statute in both civil and criminal cases, *see Tafflin v. Levitt,* 493 U.S. 455, 467 (1990); *HJ, Inc. v. NW Bell,* 492 U.S. 229, 348-9; *United States v. Monsanto,* 491 U.S. 600, 609; *Russello,* 464 U.S. at 21; *United States v. Tarquette,* 452 U.S 576, 587, 593; and the circuit courts faithfully follow its mandate in criminal RICO litigation, se e.g., *United States v. Argiulo,* 897 F.2d 1169, 1216, cert denied, 111 S.Ct. 130 (1990).

[35] "Association does not require that the defendant be employees by or legitimately connected to the racketeering enterprise." *United States v. Mokol,* 957 F.2d 1410, 1417 (7th Cir 1992).

36. That Defendant Weinstock, Friedman & Friedman, P.A. is a large organization of attorneys, or "debt collectors," and Plaintiffs request that the Department of Justice to start an inquiry into the names of some of the other victims who have suffered from the same or similar tactics of wire or mail fraud at their place of employment or home by this RICO enterprise.[36] The Plaintiffs ask that this investigation be initiated pursuant to Title 18 U.S.C.A. § 1963 and Title 18 U.S.C.A. § 1966 .

37. That Plaintiffs aver that this organization is a sordid segment of society. The actions of organizations such as these Defendants discredits the entire legal profession because they operate to commit more crimes against the people that they are, in effect, terrorizing with the theft of their credit reports and other private identity information which was given under duress if this type of credit collection is the result. This is not zealously defending a client, it is an enterprise which blatantly pursues a financial goal without a regard for ethics or legality.

38. That in addition to the other cases which will be filed for these consumer act violations, the acts themselves lead to parallel offenses for extreme negligence, severe emotional distress leading to physical injury, which is the basis for claims for tort lawsuits.

---

[36] In *United States v Elliot*, 571 F.2d 880, 903 (5th Cir), *cert denied*, 439 U.S. 953 (1978), the Fifth Circuit observed that "the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise," and Rico applies to both insiders (officers, directors, controlling shareholders) an outsiders, those persons or entities such as accounting firms, **law firms,** lenders, and other providers of services, who participate directly or *indirectly* in the enterprise's affairs through a pattern of racketeering activity. *See* 18 USC § 1962(c). *Supra,* RICO In Business And Commercial Litigation by Kevin P. Roddy, at 5-26. (**Bold** emphasis added).

39. That the manner in which these Defendants operate in the Court and in the business world through a pattern of racketeering activities is a basis for a antitrust violations [37] pursuant to the Sherman Antitrust Act,[38] Title 15 U.S.C.A. §§§§1-4 [39] since these Defendants and their Defendant RICO enterprises in Weinstock, Friedman & Friedman, P.A. have interfered with the Plaintiffs' business and these acts have affected Plaintiffs' interstate and foreign commerce.

40. That Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. crossed State lines and threatened the staff of the Plaintiffs' office that they would come to the office of the Plaintiffs and take all of the furniture and equipment, whether it belonged to the Plaintiffs or other persons or businesses in the Plaintiffs' office, through theft by conversion and implied threats of bodily harm and injury to Plaintiffs' staff which would be the ultimate monopoly of Plaintiffs' trade and commerce in violation of the Sherman Act.[40]

There is authority that the existence of fear of economic loss under the Act is determined from the perspective of the victim, not the extortionist; and that the victim must have a

---

[37] "Restraint may be exerted through force or fraud or agreement." *Lumber Co. v. United States,* 257 U.S. 377, 414 (1921).

[38] "to be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *United States v. Adams,* 759 F.2d 1099 (3rd Cir), cert. denied, 474 U.S. 906, 971 (1985).

[39] In determining any controversy arising under antitrust laws, the interests of the consuming public are paramount. *Columbia River Packers Ass'n v. Hiuton, D. Cor.,*1940, 34 F.Supp. 970, reversed 117 F. 2d 310, reversed 62 S.Ct. 520, 315 U.S. 143, 86 L.E4. 750; Immunity from the antitrust laws is not lightly imputed. *U. S. v. Philadelphia Nat. Bank,* Pa.1963, 88 S.Ct. 1715, 374 U.S. 321, 10 L.Ed.2d 915.

[40] Chief Justice Rehnquist has stated that "[w]hite collar crime is 'the most serious and all-pervasive crime problem in America today.' " *Braswell v. United States,* 487 U.S. 99, 115 n9 (1988) (quoting Conyers, Corporate and White-collar Crime: A view by the Chairman of the House Subcommittee on Crime, 17 Am Crim L Rev 287, 288 (1980)). He added, "[a]lthough this statement was made [by Rep. Conyers] in 1980, there is no reason to think the problem has diminished in the meantime." Id.

reasonable belief that the alleged extortionist had the power to harm the victim and would exploit that power to the victim's detriment. [41]

41.   That the Plaintiffs state that these overt acts are part of a pattern of racketeering activities which have been perpetrated over years, not just months, and these multiple acts of wire fraud which were committed violation of Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television), Title 18 U.S.C.A. § 1951[42] are the predicate acts by which the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. Yelin Shi, and Yu Fan further violated Title 18 U.S.C.A. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises).

> Furthermore, it is not necessary to show that accused caused the fear or made a direct threat; rather, it is sufficient to prove that accused intended to exploit the fear.  Moreover, to secure a conviction under the Act, the prosecution is not required to show that accused acted to receive, either directly or indirectly, the proceeds of his extortion of any benefit therefrom;  and a Hobbs Act prosecution is not defeated simply because the extorter transmitted the extorted monies to a third party.[43]

42.   That  Plaintiffs assert that for these acts of conspiracy through a pattern of racketeering activities the Defendants should stand trial before a jury of their peers for these predicate and overt acts.

### c.  Pattern of Racketeering Activities

43. That Defendants Yelin Shi and Yu Fan understand verbal English when they choose to, but they also act confused when the situation suits them. That is why the Plaintiffs always

---

[41] *U.S. v. Covino,* C.A.2(N.Y.), 837 F.2d 65—*U.S. v. Billups,* C.A.Va., 692 F.2d 320, certiorari denied 104 S.Ct. 84, 464 U.S. 820.

[42] The Hobbs Act protects intangible as well as tangible property. A person can be guilty of extortion under the Act for obtaining his own property from another by the wrongful use of actual or threatened force, violence, or fear. *U.S. v. Agnes,* C.A.Pa., 753 F.2d 293.

[43] *U.S. v. Haimowitz,* C.A.Fla., 725 F.2d 1561, certiorari denied 105 S.Ct. 563, 469 U.S. 1072, 83 L.Ed.2d 504.

wrote the contracts and other business issues in English so there would be no confusion since Plaintiffs knew from these Defendants' own declarations that someone would translate for them. When asked what language was used for business by Chinese around the world, the answer was always English. Defendants Yelin Shi and Yu Fan have produced no written documents to support their claims for any of their demands.

44. That when the Plaintiffs filed their first complaints against Defendant Yu Fan for other patterns of racketeering activities, the name of her real estate firm was "Nations Realty" and, upon information and belief, she also owned, or partly owned, another firm known as "United Realty." Both of these firms have now just "disappeared." There is no trace of either firm in Maryland or Virginia.

45. That Plaintiffs believe that Defendant Yu Fan is now operating under the name "BMI Realtors" in Maryland. Plaintiffs state that Defendant Yu Fan has had multiple real estate companies registered in the State of Maryland, Virginia and the District of Columbia in the last five years, and that the names have changed frequently because Realtor Broker Yu Fan has had at least three hearings for violations of the Real Property laws in Maryland for which she has been fined or her license suspended. The Plaintiffs lack details of a previous case against her in Virginia, but are aware that there is another ongoing investigation against her. Plaintiffs have no knowledge of any hearings in the District of Columbia against Defendant Yu Fan at this time.

46. That Plaintiffs state that Defendant Yu Fan's real estate firms are financed through factions in China and established for the purpose of money laundering enterprises and arranging property purchases through trusts and other entities for aliens who are either not registered in the United States immigration offices, or are involved in criminal activities which would incriminate them in the purchase of a certain property.

47.    That Plaintiffs further believe that these real estate companies have been used for 'pay offs' in Virginia through trusts pursuant to Title 18 U.S.C.A. § 1961(4) (Definitions) through violations of Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments) and Title 18 U.S.C.A. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).

### d. *Banking Violations and Identity Theft.*

48.  That in conjunction with the predicate and overt acts committed at the office of the Plaintiffs in Washington, D.C., all Defendants know exactly where the Plaintiffs' office is located in Washington, D.C., and that the Plaintiffs have had a permanent office address in Washington, D.C. for over nine years. Furthermore, the Defendants know full well that the Plaintiffs have had no permanent residence in Maryland for three years.

49.  That Plaintiffs state that Defendant Yelin Shi introduced the Plaintiffs to his Chinese employee at Chevy Chase Bank in 2002 when they opened the bank account, and Shi stated that his bank employee friend could get him any information that he wanted about people who have accounts in that bank.

50.  That the Plaintiffs' Chevy Chase Bank statements have come to a private post office box at 267 Kentlands, Blvd., Gaithersburg, Md. 20878 for three years, and that address was not known to the Defendants Yelin Shi and Yu Fan when they were on better terms with the Plaintiffs. *So, how did the Defendants know exactly where these bank statements were being sent if they were not informed by someone inside the bank?*

51. That Plaintiffs state that this is too obvious on the face of the record to be ignored. In addition to committing these overt RICO acts, the Defendants have incriminated an otherwise 'innocent hands' banking institution  in their pattern of racketeering activities in violation of Title 18 U.S.C.A. § 656 (Theft, embezzlement, or misapplication by bank officer or employee), and Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit) , and Title 18 U.S.C.A. § 894 (Collection of extensions of credit by extortionate means).

52. That, furthermore, the Plaintiffs assert that the Defendants' "friend" at the Chevy Chase Bank has committed an identity theft of the Plaintiffs' private information in violation of Title 18 U.S.C.A. § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information)   and Title 18 U.S.C.A. § 1028A.  (Aggravated identity theft)  *since there is simply no other way that this private post box information for the bank account could have been known by the Defendants.*

53. That Plaintiffs aver that these are serious offenses for a banking institution and will initiate an investigation by the Financial Institutions Examinations Council for violations of Title 12 U.S.C.A. § 3303 (Financial Institutions Examination Council); Title 12 U.S.C.A. §  1828 (Regulations governing insured banks); and, Title 12 U.S.C.A. §  1818 (Termination of status of insured bank).

### e. Fraud upon the Court by Defendants' Attorney

54. That the Defendants Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan at all times used  fraudulently acquired information to obtain a fraudulent judgment in a Maryland State Court so that Writs of Attachment or

Garnishment were issued on a *parol* agreement for an *ordinary unsecured obligation* which is not legal under Maryland law: [44]

a) when *"such judgments do not create a lien upon real estate or chattels real in Maryland, or upon chattels permanently located here"*; and,

b) where such judgments are regarded as *"ordinary unsecured obligations"* because:

i. the judgment was awarded for a, supposed,  parol agreement, and parol agreements are *"ordinary unsecured obligations"* upon which a lien can not be attached; and,

ii. they are regarded as *"specialty debts, within the meaning and effect of our Statute of Limitations."*

. . . attention should be called to the  fact that, whether rendered by the courts of foreign countries or by the courts of the United States in any other district than Maryland, or by the courts of our sister States, such judgments do not create a lien upon real estate or chattels real in Maryland, or upon chattels permanently located here,[45] nor are they entitled to priority, in the distribution of the estates in this State of the parties thereto.[46] They are regarded as specialty debts, within the meaning and effect of our Statute of Limitations, but so far as they relate to the right of the judgment creditors to participate in the distribution of the estate or assets, in this State, of the judgment debtors, they are regarded as ordinary unsecured obligations.[47]

55.  That this Honorable Court also operates under these same Maryland laws since this courthouse sits on Maryland land conceded to the District of Columbia pursuant to the Organic Act of 1801 and although this fraudulent judgment is not yet being contested in this Court, this unlawful debt is brought forward to prove the extent and continuity of the pattern of racketeering activities pursuant to Title 18 U.S.C.A. § 1961(4) and (5) (Definitions).

---

[44] *Brengle v. McClellan*, 7 G. J. 443. See *Beilman v. Poe,* 138 Md. 486.
[45] *Bank of U.S. v. Merchant's Bank*, 7 Gill, 437.
[46] *Brengle v. McClellan*, 7 G. J. 443. See *Beilman v. Poe,* 138 Md. 486.
[47] *Brengle v. McClellan*, 7 G. J. 443. See *Beilman v. Poe,* 138 Md. 486.

56. That there was never a written agreement of any kind for this State Foreign Judgment claim between Plaintiffs and Defendants Yelin Shi and Yu Fan. The legitimate issues concern the induced breach of written contracts for soy beans and crude oil for which the Plaintiffs suffered great economic loss and for which they are still obligated for these contracts to third parties. Those issues have never been fully and fairly adjudicated and complaints concerning these contractual disputes are going to be filed separately after the previous criminal activities concerning these contracts are separated from the civil issues.

> In *United States v. Scotto*, 641 F.2d 47 (2d Cir 1980), cert. denied, 452 U.S. 961 (1981), the Second Circuit fashioned a two-part test to determine what constitutes "conducting the activities of an enterprise," holding that the proper connection is established when "1)one is enabled to commit the predicate offenses solely by virtue of [one's] position in the enterprise or involvement or control over the affairs of the enterprise, or 2) the predicate offenses are related to the activities of that enterprise."

### f. Continuity of Pattern of Racketeering Activities

57. That the Defendants originally submitted the Plaintiffs' correct address in Washington, D.C. when the Defendants filed the Complaint for Foreign Judgment in the Circuit Court for Montgomery County, Maryland, but, the Defendants, realizing that they had no real permanent address to which they could attach property in Maryland then attached the Plaintiffs' private box number from a 'Parcels Plus' retailer in Gaithersburg, Maryland, to the State Court as a "residence." This is intrinsic and extrinsic fraud in multiple directions.

58. That, first of all, the Defendants should never have used a mail box as a "last known address" since the Plaintiffs have never resided in a postal box, and Defendants knew full well the Plaintiffs' office address since they had just committed a list of criminal acts against the staff of the Plaintiffs' legitimate office in Washington, D.C.

59. That the Plaintiffs aver that the answer lies with the fact that the Defendants had no subject matter jurisdiction, no personal jurisdiction, and no venue for a Foreign Judgment in Maryland. Plaintiffs will state their right to try the entire case under the laws of the District of Columbia since Defendants Sidney S. Friedman, Greg I. Rose, and, Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan:

a. started the groundwork for this complaint by sending threatening letters to the Plaintiffs' office address in Washington, D.C. in violation of Title 18 U.S.C.A. § 1341 (Frauds and swindles);

b. made numerous telephone calls and sent faxes to Plaintiffs' office in Washington, D.C. in violation of Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television);

c. initiated multiple overt and predicate acts of fraud, deceit, extortion, threats of violence, and interference with commerce in violation of Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence), Title 18 U.S.C.A. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises), Title 18 U.S.C.A. § 1959 (Violent crimes in aid of racketeering activity), Title 18 U.S.C.A. § 875 (Interstate communications), Title 18 U.S.C.A. § 893 (Financing extortionate extensions of credit) and Title 18 U.S.C.A. § 894 (Collection of extensions of credit by extortionate means) through wire fraud to the staff in Plaintiffs' office in Washington, D.C.; and,

d. then willfully and falsely filed in a Maryland State Court to obtain a felonious foreign judgment and fraudulent Writs of Attachment.

60. That the Plaintiffs allege that the Defendants will cry foul because some of the issues are going to be retried in this Court due to the Defendants' criminal activities in other proceedings. The Defendants' criminal acts performed through multiple RICO enterprises nullify

all previous cases and filings; the cases have to be tried anew, and this time with a jury trial, due

to the manifold constitutional violations. None of these former proceedings were ever fully

adjudicated on the merits of the cause of action in a court of fair and just law.

61.   That the conduct of the enterprises activities has always been under the control of

Defendant Sidney S. Friedman, Edward Friedman,  and the other principles of Weinstock,

Friedman & Friedman, P.A. in violation of Title 18 U.S.C.A. §1962(c)(Prohibited activities).

Although  Defendants Yelin Shi and Yu Fan brought about the complaint, they then turned the

*control* of the initial RICO enterprise over to these "debt collectors."  It  is Defendant Sidney

Friedman, with Defendant Weinstock, Friedman & Friedman, P.A., who formed RICO

enterprises within the original RICO enterprise with the other Defendants and third parties. He

orchestrated the series of events and is responsible for the most incriminating acts which makes

this such a textbook RICO case.

> ¹   "Conduct" is synonymous with "management" or "direction." Webster's Third
> New International Dictionary 473 (1961). The  "conduct of [the enterprise's] affairs" thus
> connotes more than just some relationship to the  enterprise's activity; the phrase refers to
> the guidance, management, direction or other exercise of control over the course of the
> enterprise's activities. In order to participate in the conduct of an enterprise's affairs,
> then, a person must participate, to some extent, in "running the show." *Yellow Bus Lines,*
> *Inc. v. Local Union 639,* 913 F.2d 948, 954 (DC Cir. 1990).
> Furthermore:
>> We note that our construction of the statute does allow for participation in the conduct
>> of an enterprise's affairs by "outsiders" as well as "insiders." Section 1962 (c)
>> provides that participation may be indirect as well as direct, 18 U.S.C. § 1962 (c),
>> and nothing in our interpretation of the participation requirement  precludes liability
>> on the part of outsiders. The crucial question is not whether a person is an insider or
>> an outsider, but whether and to what extent  that person controls the course of the
>> enterprise's business. *Id.*

62.    That the  Defendants Yelin Shi and Yu Fan pay for these criminal acts to be

performed, and the other Defendants also distribute the proceeds of the RICO acts in violation of

Title 18 U.S.C.A. § 1956 (Laundering of monetary instruments) and §1957 (Engaging in

monetary transactions in property derived from specified unlawful activity). The depth and breadth of the Defendants' criminal acts has incorporated others who had the authority to stop the RICO enterprises when they realized that the plot was criminal but failed to do so.

> The courts are split on the issue of whether a defendant must actually agree to commit the predicate acts *himself or herself* in order to be liable under § 1962 (d). The majority rule recognizes that a defendant need not personally commit the predicate acts as long as he or she actually agrees to their commission by another party. *Shearin v. EF Huton Group, Inc.,* 885 F.2d 1162, 1166 (3rd Cir 1989).

## B. INVASION OF PRIVACY

63.    That the standard by which the right of privacy is measured is that of the person of ordinary sensibilities. The acts of the Defendants constitute an invasion of the Plaintiffs' right of privacy, and the Defendants' acts are of such a nature that a reasonable man would foresee that the acts would probably cause mental distress and injury to anyone of ordinary feelings and intelligence situated in like circumstances as the Plaintiffs.

64.    That in order to recover for an invasion of the right of privacy, it is not necessary for Plaintiffs to prove that they suffered special damages, but in this case the Plaintiffs have been denied their constitutional rights and because of this loss, the Plaintiffs have been denied their civil rights pursuant to Title 42 U.S.C.A. § 1983 (Civil action for deprivation of rights).

65.    That the Plaintiffs' right to privacy and reputation has been in good standing in the community and the Plaintiffs Samuel K. Jacobs and Nancy M. Heckerman have been embarrassed and humiliated, and their privacy has been unwarrantedly invaded by the actions of the Defendants since 2002 when they were instructed to accidentally meet the Plaintiffs through Defendants' "lost" dog who strayed to their yard.

66.    That Plaintiffs have received many evidences of loss of esteem and practice arising from the Defendants' said derogatory statements and papers of false claims and have sustained

personal pecuniary loss thereby.  That the continuation of the distribution of these libelous  and defamatory statements and papers injures more and more the Plaintiffs' standing and reputation within the community and the income that they deserve to derive from their professions; that Plaintiffs have already sustained much injury  in that regard to these damages.

67.    That because of the Defendants' malicious, unlawful and reckless violation of Plaintiffs' right to privacy, and  disregard of the Plaintiffs' right to work   has been obstructed by fraudulent claims of felonious debts, and punitive and exemplary damages should be assessed against Defendants.

68.    That unless restrained from so doing by this Honorable Court, Defendants' threats will continue to invade Plaintiffs' privacy by following and harassing them; that Plaintiffs have no adequate remedy at law.

69.  That Plaintiffs aver that the U.S. District Court must consider why a Maryland State Court openly defied its own precedents, not to mention the Federal statutes, when it failed to question the efficacy of a  Foreign Judgment which was in violation of not only the Maryland Rules, but, and more importantly, established Maryland Laws pursuant to the Constitution of the State of Maryland. [48]

## C. THE FORMING OF A CONSPIRACY.

70.  That through the internet third parties Vijay Patel and Dilip Patel, who are Canadian citizens or residents, found the U.S. District Courts records and the names of Defendants Yelin Shi and Yu Fan. Vijay Patel then found the names of Defendants Sidney S. Friedman, Greg I.

---

[48] The fact that a judgment was obtained through fraud or collusion is generally held to constitute a sufficient reason for opening or vacating such judgment either during or after the term at which it was rendered. *Griffin v. Griffin,* App.D.C., 66 S.Ct. 975, 328 U.S. 876, 90 L.Ed. 1645; *In re Laing,* C.A.10(Okl.). 945 F.2d 354; *Rook v. Rook,* 353 S.E.2d 756, 233 Va. 92.

Rose, and, Weinstock, Friedman & Friedman, P.A., and contacted them.[49] Vijay Patel then called

the Plaintiffs, and others, multiple times to tell them that he was talking to Defendant Sidney S.

Friedman and had given him information about the Plaintiffs through fax and mail. Another

RICO conspiracy was formed by these Defendants with Vijay Patel and Dilip Patel pursuant to

Title 18 U.S.C.A. § 241 (Conspiracy against rights). [50]

> In civil RICO doctrine, two concepts emerge:
> First ,the plaintiff seeks to impose vicarious liability on an employer that is not
> named as an enterprise. Second, the plaintiff seeks to impose liability on an enterprise-
> employer for a defendant-employee's violation.
> It is necessary to show that an officer or director had knowledge of, or was
> recklessly indifferent toward, the unlawful activity. Once knowledge or reckless
> indifference at this high level has been determined, the court may then consider other
> factors, among them the number of high-level employees involved in the racketeering
> activity, their degree of participation in the racketeering activity, whether these high-level
> employees themselves committed the alleged predicate acts, and whether the corporation
> directly and substantially benefited from the racketeering activity. *Gruber v. Prudential-
> Bache Secs., Inc.,* 679 F.Supp. 165, 181 (D.Conn. 1987).

71. That the latest RICO conspiracy is being conducted by Defendants Vijay Patel and

Dilip Patel pursuant to Title 18 U.S.C.A. § 1962(b)[51] (Prohibited activities), but on this side of

the border its being conducted by and entirely controlled by Sidney S. Friedman, Greg I. Rose,

and, Weinstock, Friedman & Friedman, P.A. pursuant to Title 18 U.S.C.A. § 1962(c).

---

[49] If a man joins and acts with an assembly of people, his intent is always to be considered and adjudged to be the same as theirs; and the law judges of the intent by fact. *Case of Fries,* 9 Case No. 5,127.

[50] Direct proof of the purpose, however, is not legally necessary. The concert of the purpose may be deduced from the concerted action itself, or it may be inferred from facts occurring at the time, or before or afterwards. *Charge to the Grand Jury-Treason,* [2 Wal. Jr. 134; 4 Am. Law J. (N.S.) 83; 5 Pa. Law J.R. 55; 9 West. Law J. 163.] Circuit Court, E.D. Pennsylvania. Sept. 29, (1851) 30 Fed.Case No. 18,276.

[51] RICO required a specified relationship between the RICO defendant and enterprise. Either the enterprise must be the object or goal of the racketeering activity (§§ 1962(a) and (b)), or it must be a tool utilized to carry out racketeering activity. *Benard v. Hoff,* 727 F. Supp 211, 214 (D MD 1989).

Post-Webster decisions also decline invitations to embellish section 1962 (c) with other adornments. The plaintiff need not demonstrate (1) that the defendant solidified or otherwise enhanced his position in the enterprise through commission of the predicate acts, (Scotto) (2) that the racketeering activities corrupted or changed the enterprise's policies or administration, (Scotto) or (3) that the racketeering activity's proceeds went to the enterprise rather than to the defendant. *US v. Welch,* 656 F.2d 1039.

72. That the conspiracy is completed pursuant to Title 18 U.S.C.A. § 1962(d).

As a threshold matter, most decisions have concluded that RICO conspiracy does not require allegation or proof of an overt act. In *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir. 1990), the court of appeals held that although a criminal RICO conspiracy does not require proof of an overt act, standing in a private action alleging a RICO conspiracy requires proof of proprietary injury from an overt act. The injury must be caused by an overt act that is a section 1961(1) predicate act, and not merely one caused by other overt acts furthering the conspiracy. 897 F.2d at 25.

73. That Vijay Patel then called the Plaintiffs, their family, associates, and others to tell the Plaintiffs that he and  Defendant Sidney S. Friedman  were going to join forces to "destroy you." Vijay Patel had already been charged with committing acts of violence in Canada against his wife, and has joined another person who has stated that he could bomb any U.S. city from an airplane, and that they have joined an Al Qaeda coalition in Canada named JET AIRWAYS JOY OF FLYING.  It  is fair and reasonable to take the statements that these men made about bombing Detroit quite literally.[52]

74.  That  Vijay Patel has stated to the Plaintiffs both on the telephone and through messages on the answering machines and internet that he has joined in this conspiracy and has gathered information about the Plaintiffs from third parties which is detrimental to them, but he might not work with them if he is given money. Vijay Patel believes that extortion and bribery

---

[52] In treason there are no accessories; all who engage in rebellion at any stage of its existence, or who designedly give to it any species of aid and comfort, in whatever part of the country they may be, are principals in the commission of the crime. *U.S. v. GREATHOUSE*, et al. 26 Fed. Cas. No. 15,254; 4 Sawy. 457; 2 Abb. U.S. 364; Circuit Court, N. D. California.  Oct. 17, 1863.

are standard in any society. But in the Untied States extortion and blackmail are still violations of Title 18 U.S.C.A. § 1951 and Title 18 U.S.C.A. § 1952.

75.   That since the Plaintiffs contacted the Department of Homeland Security about the possible bombings of Montreal and Detroit,  Vijay Patel and Dilip Patel have been monitored.[53] And so have all of the people that Vijay Patel has had contact with in the United States. The Al Qaeda is a foreign entity which although it has not a formal government within concrete boundaries of its own, it has an authority which is at war upon the United States and an army to carry out its orders and operations. This is not an assumption, it has been on the news reports almost every day for the last three months.

76.   That Plaintiffs state that every person who Vijay Patel has had contact with is also being monitored pursuant not only to Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries), but also Title 18 U.S.C.A. § 793 (Gathering, transmitting or losing defense information) and § 794 (Gathering or delivering defense information to aid foreign government).

77.   That although the monitoring has been challenged and debated in Congress, it is being used legally to monitor such threats as those purposed by these Defendants and their coconspirators pursuant to Title 18 U.S.C.A. § 2332b (Acts of terrorism transcending national boundaries). **Plaintiffs will demand that copies of this "information" which Vijay Patel sent to Defendants be submitted to this Court. It is time that the slander and libel be admitted to**

---

[53] If war be actually levied, - that  is a body of men be actually   assembled for the purpose of effecting a treasonable purpose,- all those who perform any part, or however remote from the scene of the action, and who are actually leagued in the general conspiracy, are to be considered as traitors.   *Ex parte Bollman,* 4 Cranch 126;  *United States vs. Burr,* Ibid. 469;  *People vs. Lynch,* 1 Johns. 553.

**an Honorable Court for justice to be finally administered to those who have falsely accused the Plaintiffs.**

## D. FUNDAMENTAL RICO

78. That there are four basic causes for this RICO lawsuit:

a.  The cause of injury by the Defendants has been personal, but the effect has been equally disruptive in the Plaintiffs' interstate and foreign commerce. ("primary purpose of RICO. . .[which] is to reach those who ultimately profit from racketeering, not those who are victimized by it." *Haroco, Inc. v. American Natl Bank & Trust*, 747 F.2d 384, 401 (7th Cir 1984), *affd on other grounds*, 471 U.S. 606 (1985)).

b. The Injury in Fact has been actual and direct, not 'hypothetical' or 'speculative.' The events have occurred and the damages are real. The financial obligations created for the various breaches of contract and inducement of breaches of contract by all of these Defendants are extensive and the merits are not subjunctive hypotheses.

c.  The  threats of physical injury and violence are real and they have been voluntarily recorded or written, or have been witnessed; and the proof of the Defendants' extrinsic frauds are the overwhelming overt acts which have also been documented.

d. That most of the overt acts to interfere in the commerce of the United States which have been committed against the Plaintiffs have been financed by foreign entities which have orchestrated these crimes to the advantage of a foreign nation or to the detriment or disadvantage of the United States through these foreign puppets.

e. The Plaintiffs will prevail with the Probable Cause for these damages and injuries  if tried in a fair and just court. The probable cause exists because of the merits of the written contracts and agreements, and upon the testimony of witnesses to these business ventures, and

upon the abundance of evidence and proof of the purported frauds. Plaintiffs allege that there is nothing "fair" about the smoke screen practices that emanate from the various offices of the Defendants.

79. That Plaintiffs assert that this continuous relationship of the individual defendants using the defendant enterprises, and fraud upon the courts, to inflict these criminal actions of racketeering activity upon the Plaintiffs was a conspiratorial and intentional violation of the statute laws and the equitable laws. These overt acts in violation of these laws were executed by the individual defendants through predicate acts of racketeering activities of wire fraud by the Defendant persons through the Defendants enterprises by threatening the Plaintiffs with fear in a their own office in order to compel and complete the plans for the extortion.[54] Thus the RICO enterprises were formed.

80. That Plaintiffs state that the use of the mails and wires was reasonably contemplated or reasonably foreseeable because of these predicate and overt acts in violation of Title 18 U.S.C.A. § 1343 (Fraud by wire, radio, or television) and §1341 (Frauds and swindles).

81. That Defendants Yelin Shi and Yu Fan conspired with the other individual Defendants Sidney S. Friedman and Greg I. Rose who used Defendant Weinstock, Friedman & Friedman, P.A. as the catalyst for the main RICO enterprise. Under Title 18 U.S.C. § 1962 (d),

---

[54] Under this "connection" or "nexus" requirement, the racketeering activity must in some way stem from the enterprise's activities or otherwise have some relationship to the enterprise. . . In the present case, the connection requirement is satisfied in Dierdorff was able to commit the fraud by virtue of his position with or work for Sun or if the fraud was related to Sun's business.

Sun's complaint alleges the required nexus. When he committed the alleged predicate acts of mail fraud, Dierdorff acted in his capacity as Sun's president. The acts of mail fraud were all related to the activities of Sun. Therefore, the complaint adequately alleges that Dierdorff conducted or participated in the conduct of Sun's affairs through a pattern of racketeering activity. *Sun Savings & Loan Association v. Dierdorff*, 825 F.2nd 187, at 195 (9th Cir 1987).

the majority of the courts agree that a person associated with a defendant in a RICO enterprise need not *herself* be personally or directly involved in the commission of the predicate acts as long as that person agrees to the commission of those predicate acts by another person, or benefits from the commission of those acts.[55] This main RICO enterprise was then used by the Defendants to form separate and new RICO enterprises for each court which Defendants manipulated through extrinsic and intrinsic fraud and fraud upon the court by these separate and new RICO enterprises.

82. That at all times, Defendant Sidney S. Friedman, through Defendant Weinstock, Friedman & Friedman, P.A., was conducting the patterns of racketeering activities for all of the Defendants through violations of Title 18 U.S.C.A. § 1962(c) (Prohibited activities).[56] The Plaintiffs state that they were subjected to further injuries by the forming of each separate and new RICO enterprise for each of the different courts used for these overt acts. All Defendants were acting in concert with and under the direction of the upper-rung officers and executives of the Defendant enterprises which orchestrated and continued the pattern of racketeering activity.

83. That these Defendants have formed their conspiracies and their RICO enterprises to injure and damage the Plaintiffs. Each is obligated for a large debt for a business venture for

---

[55] *"to be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts."*  *United States v. Adams,* 759 F.2d 1099 (3rd Cir), cert. denied, 474 U.S. 906, 971 (1985).

[56] "Conduct" is synonymous with "management" or "direction." Webster's Third New International Dictionary 473 (1961). The "conduct of [the enterprise's] affairs" thus connotes more than just some relationship to the enterprise's activity; the phrase refers to the guidance, management, direction or other exercise of control over the course of the enterprise's activities. In order to participate in the conduct of an enterprise's affairs, then, a person must participate, to some extent, in "running the show." *Yellow Bus Lines, Inc. v. Local Union 639,* 913 F.2d 948, 954 (DC Cir. 1990).

which the Defendants could not perform their part of the task. Now that the obligation is due to third party beneficiaries, and the Defendants are each attempting to evade and avoid the larger debts by claiming that the smaller amounts are superior to the Plaintiffs' larger claims. The math indicates that this simply does not compute. [57]

84.    That Defendants Yelin Shi and Yu Fan offer no written agreements in support of their claims: No written contract, no promissory note, no valid substance to uphold their claim that there was any obligation by the Plaintiffs to give the Defendants any remuneration of any kind. Plaintiffs, however, can and will submit two written contracts and substantial documents from shipping companies, suppliers of goods, accounting records, fees from attorneys for preparation of legal documents for the shipments, and literally pages of other documents which support their breach of contract claims.

85.    That the $140,000.00 which was fraudulently awarded to the Defendants Yelin  Shi and Yu Fan does not compensate or begin to equal the $5,390,000.00 in damages which is the debt for the two contracts breached by the Defendants. These criminal acts of the Defendants Yelin Shi and Yu Fan were acts of negligence and fraud for which the Plaintiffs have suffered, and will continue to suffer.  Plaintiffs aver that this size of debt acquired through fraud can collapse a company, and it is this sort of pattern of racketeering activities for which the RICO statutes were enacted.

---

[57] The intent to defraud need only be shown from a "reckless indifference  for the truth." *United States v. Frick,* 588 F.2d 531, 536 (5th Cir.), cert denied, 441 U.S. 913 (1979). See also *United States v. Boyer,* 694 F.2d 58, 59-60 (3rd Cir. 1982); *United States v. Perkal,* 530 F.2d 604, 605 (4th Cir.), cert. Denied, 429 U.S. 821 (1976); *Kronfeld v. First Jersey Nat'l. Bank,* 638 F.Supp.1454 (D.N.J. 1986*); Louisiana Power & Light v. United Gas Pipe Line,* 642 F.Supp. 781, 803 (E.D. La. 1986)  ("knowing intent to defraud may be found when a defendant deliberately proceeds with a reckless indifference for the truth, making representations that are baseless, and shutting his eyes to their probable falsity.").

## V.  CONCLUSION

86.  That a threat of bodily harm is neither an intrinsic distinction nor a necessary association of the crime of extortion under the Hobbs Act (Title 18 U.S.C.A. § 1951 (Interference with commerce by threats or violence).  Therefore, the fear element under the Act can be fulfilled by threats other than threats of bodily harm or physical injury, such as by putting the victim in fear of economic harm or loss; and the offense of extortion occurs under the Act when accused utilizes or exploits a victim's reasonable fear of economic harm or loss.

87.  That the type of "debt collection" services practiced by the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A. denotes an invasion of privacy that extends beyond the reasonable norm for a legitimate business. Said "debt collection" practices constitute extreme negligence and severe economic injury as revealed in this case.

88.  That the Plaintiffs assert that the authorization for this  type of legal business offends the very basis of the Citizens' fundamental constitutional rights pursuant to the:

89.  **Article I, § 8, cl. 3** right to not have a State  interfere with contracts of commerce which confer authority for the State to issue unWarranted liens and writs of attachment which are the result of the denial of **Amendment IV** rights *"against unreasonable searched and seizures"* and which, if such rights are convoluted by the State,  deprive the Citizen of his or her **Amendment V** and **Amendment XIV** rights to not  *"be deprived of life, liberty, or property, without due process of law;..."* which, if denied, nullify the Citizen's **Amendment VII** *"right of trial by jury shall be preserved,"*  without which there are no guarantees to each Citizen of his or her  **Amendment XIV** right to not be denied the jurisdiction for *"the equal protection of the laws."*

90.  That the constitutional rights are all stated separately, but if one is violated they all are denied. This is indeed a most complex case due to the extent of the constitutional violation and criminal acts which have been perpetrated in multiple States. There must be one judicial authority which can take control of these cases and consolidate the facts. Otherwise, the Plaintiffs will never have a remedy at law which will completely close this case and the complaints will go on ad infinitum.

## VI.  COUNTS

### COUNT 1 - UNFAIR AND DECEPTIVE ACTS AND PRACTICES

91.  That the Plaintiffs incorporate and reallege paragraphs 1 through 90 as if fully set forth herein.

92.  That at all times relevant to this complaint, Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, and their various leaders and associates were, and still are, part of multiple enterprises as defined by Title 18 U.S.C. § 1961 (4) that  engage in, and  whose activities affect,  interstate and foreign trade or commerce.

93.   That these unfair or deceptive acts or practices are actionable under such statutes and the regulations, if any, promulgated by the Attorney General pursuant to Title 18 U.S.C. § 1968. These unfair and deceptive acts occurred primarily and substantially through wire fraud within the States of Virginia, Maryland, other States,   and countries  in which Plaintiffs conduct their interstate and foreign commerce in violation of Title 18 U.S.C. § 1962 (b) and (c).

94.  That the various subsidiary  enterprises, upon the direction of Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan and other associates and entities not so named in this complaint but to be revealed upon discovery, by

the commission of unfair and deceptive acts or practices have caused the Plaintiffs to suffer direct, indirect, and consequential damages, including but not limited to:

    a.  lost business opportunities from the lack of completion of contracts for interstate and foreign commerce;

    b.  lost out-of-pocket expenses for fees and expenses for outside professionals due to the Defendants' fraudulent and deceptive acts of multiple racketeering activities;

    c.  lost profits from the lack of completion of contracts in the United States, Europe, and China affecting interstate and foreign commerce; and,

    d.  lost good reputation and good will.

WHEREFORE, the Plaintiffs demand that judgment enter against the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan, who have operated through their multiple subsidiary enterprises, ordering:

    A.  a finding that the Defendants used or employed or ordered unfair and deceptive acts and/or practices in violation of Title 18 U.S.C. § 1962(b) and (c);

    B.  an award to the Plaintiffs of punitive damages or monetary damages in treble the amount of their actual damages;

    C.  a finding that Defendants Yelin Shi and Yu Fan, and others not so named in this complaint, estop them from raising any affirmative defenses to this action; and

    D.  such other and further relief as the Court deems proper.

<u>COUNT 2 - WIRE FRAUD AND FEDERAL RICO</u>

95. That the Plaintiffs incorporate and reallege paragraphs 1 through 94 as if fully set forth herein.

96.   That on at least two or more occasions, Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan, and/or their subsidiary enterprises, have continually used the aforesaid intentionally fraudulent and deceptive schemes on the victim Plaintiffs, that were designed to:

a.  bait the Plaintiffs into submitting information not for the purpose intended but to deceive the Plaintiffs into supplying goods and services for projects the Defendants had no intention of completing, and then fraudulently taking over the contracts to the detriment of the Plaintiffs' business ventures, and their employees, so that later an unfounded and false claim could be generated for $140,000.00.

97.   That in furtherance of the aforesaid intentionally fraudulent schemes, at least two or more of the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan through their multiple RICO enterprises made numerous interstate and foreign telephone calls and made use of other interstate wire facilities in repeated violations of Title 18 U.S.C. § 1343 in order to threaten the Plaintiffs, their family, their associates and their respective families, and their office staff.

98.   That the use of interstate and foreign wire systems included but were not limited to interstate and foreign telephone calls inside Maryland, from Maryland to the District of Columbia, Virginia, and other states, and to Canada and other countries not yet known, the purpose of which was to enter into, execute, effectuate, facilitate, and promote the aforesaid frauds and schemes.

99.   That each of the aforesaid deliberate and willful acts of misconduct by Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan and their multiple enterprises, and by their various associates who are commandeering these

predicate acts constituted violations of Title 18 U.S.C. § 1343 (Fraud by wire, radio or television), and other constituted instances of "racketeering activity" as defined in Title 18 U.S.C. § 1961(1) and § 1956 (c) (7) (D).

100. That the numerous predicate acts of racketeering activity by the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, their multiple enterprises, associates, leaders, and other employees, were interconnected and related, and were part of a pattern of racketeering activities and schemes to defraud the Plaintiffs, and perpetrated for the same or other similar purpose, thus constituting a "pattern of racketeering activities" as defined in Title 18 U.S.C. § 1961 (5).

101. That the Defendant Weinstock, Friedman & Friedman, P.A., with Nations Realty, United Realty, BMI Realtors, and Starlin Interiors, and other associations instigated by, or joined by Defendants Sidney S. Friedman, Greg I. Rose, Yelin Shi, and Yu Fan, are each an "enterprise" as defined in Title 18 U.S.C. § 1961 (4).

102. That through said patterns of racketeering activities:

a. The individual Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan have attempted to collect unlawfully, willfully, and knowingly received income derived from direct and indirect racketeering activities, and have invested, directly and indirectly, such income or the proceeds thereof in the promotion and continuation of the RICO enterprises as aforementioned in this complaint in violation of Title 18 U.S.C. § 1962 (a);

b. The individual Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, and other officers, attorneys and employees not so named as of this filing but to be named later, have acquired and

maintained, directly and indirectly, an interest in or control of the activities of "Weinstock, Friedman & Friedman, P.A.," "Nations Realty," "United Realty," "Starlin Interior," and "BMI Realtors," which are associations-in-fact, entities, corporations, or enterprises in violation of Title 18 U.S.C. § 1962 (b);

c. The individual Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, and the other officers, attorneys and employees to be named later, have conducted and participated, directly and indirectly, in the conduct of said RICO enterprises' affairs in an attempt to control the Plaintiffs' interstate and foreign commerce in violation of Title 18 U.S.C. § 1962 (c);

d.     The individual Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, and other officers, attorneys and employees not so named but who shall be revealed at a later date, conspired together at different places and among multiple different associations to perform those actions and directions which have been enumerated in paragraphs a-c above in violation of Title 18 U.S.C. § 1962 (d).

103.   That the result of the foregoing violations of the law and the  patterns of racketeering activities, and the receipt and investment from the fraudulent patterns, the acquisition or maintenance of control over the activities of the Defendants' enterprises, the conduct of the affairs of the Defendants' enterprises, is that the consumer Plaintiff victims have been injured in their business and property and shall be able to recover threefold the damages sustained and the cost of the suit pursuant to Title 18 U.S.C. § 1964 (c). The Plaintiffs' damages include but are not limited to:

a. the loss of business contracts for interstate and foreign commerce;

b. the loss of business contracts for new joint ventures because of the Defendants' predicate acts;

c. the loss of profits from the contracts that were never brought to fruition in the United States, China and Europe due to Defendants' interference with Plaintiffs' own office;

d. the loss of honest services from fraudulent contract agreements with the Defendants' enterprises;

e. the loss of revenue and salaries for the officers from these businesses; and,

f. the loss of good will and reputation in interstate and foreign commerce.

104. That Plaintiffs allege that such acts are the predicate acts which include wire fraud, interference with commerce, and attempting to engage in monetary transactions in property derived from specified unlawful activity which have constituted this pattern of racketeering activity. Plaintiffs allege that they have been continuously injured and will continue to be injured pursuant to violations of § 1962 (a) by the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, their multiple enterprises, and individual Defendants.

WHEREFORE, the Plaintiffs demand that judgment enter against the Defendant Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan aforementioned:

A. an award to the Plaintiffs of monetary damages in treble the amount of their actual damages for the violations of these contracts and other interest charges; and,

B. such other and further relief as the Court deems proper.

## COUNT 3– TITLE 18 U.S.C. § 1962 (b) VIOLATIONS

105.   That the Plaintiffs incorporate and reallege paragraphs 1 through 104 as if fully set forth herein.

106.   That the Plaintiffs allege that pattern of racketeering activities as aforementioned are the actions of an organized crime group by association in fact, and,  under the guise of corporations or companies, the officers and employees of the Weinstock, Friedman & Friedman, P.A., Nations Realty, BMI Realtors, and Starlin Interiors are operating these enterprises pursuant to these actions. The  officers and executives, and the employees under the direction and control of Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, Yu Fan, and others, have infiltrated  legitimate businesses as members of a crime organization because they have an *interest in* and *control of* the enterprises which affect interstate and foreign commerce in violation of  Title 18 U.S.C. § 1962 (b).

107.   That the Plaintiffs allege that the intentional, fraudulent, and  criminal activities through  extortion by the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and  Yu Fan, their multiple enterprises which are continuing the same acts of bait and switch of funds which resulted in the stolen $1.5 million dollars during the last ten years by the Defendants' leaders and other associates.

108.   That the continuation of these previous predicate acts of a pattern of racketeering activities along with the threats, thefts by conversion, extortions, identity theft, bank fraud, intrinsic and extrinsic fraud, and other criminal acts are the "causes in fact"  which directly and indirectly halted the  completion of the Plaintiffs' interstate and foreign commerce due to  the constant overriding stress of the threats of attempted murder and kidnapping of the Plaintiffs and their family, and lack of time and resources which were fraudulently and feloniously stolen by the Defendants and their associates during the last ten years.

109. That the Plaintiffs allege that the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan with whom the Plaintiffs had dealt in a professional manner had the knowledge of the objectives of this situation which increased the amount of criminal activity against the Plaintiffs with the breaches of contract and trust, and with threatened physical and economic violence in violation of Title 18 U.S.C. § 1951 (a) and Title 18 U.S.C.A. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises).

WHEREFORE, Plaintiffs pray that a finding issue from the Court that:

A. the Defendant individuals, and their enterprises, named and not named in this complaint who are part of this conspiracy, who used, employed, or ordered the unfair and deceptive acts in violation of Title 18 U.S.C. § 1951 (a)(Interference with commerce by threats or violence), Title 18 U.S.C.A. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises), and § 1962 (b), be ordered to cease and desist their criminal actions, and that a full investigation be started by the Attorney General of the United States pursuant to Title 18 U.S.C.: § 1968 (Civil Investigative demand), § 1963 (Criminal penalties), and § 1966 (Expedition of actions); and,

B. such other and further relief as the Court deems proper.

## COUNT 4 – AIDERS AND ABETTORS

110. That the Plaintiffs incorporate and reallege paragraphs 1 through 109 as if fully set forth herein.

111. That the Plaintiffs allege that the Defendants Sidney S. Friedman, Greg I. Rose, & Weinstock, Friedman & Friedman, P.A., Yelin Shi, and Yu Fan, agreed to participate in and commit prohibited predicate acts in violation of Title 18 U.S.C. § 1962 (a) (b) and (c) through

their multiple enterprises with other coconspirators. Plaintiffs further allege that the agreement to participate in the predicate acts of the racketeering activities implicated the Defendant individuals as aiders and abettors of the continued pattern of racketeering activities of the Defendant enterprises in violation of Title 18 U.S.C. § 2 and § 1962 (a).

112.    That the Plaintiffs allege that the injury to their business was directly instigated and developed by the Defendant individuals through the pattern of racketeering activities pursuant to the policies and functions of the Defendant enterprises in violation of Title 18 U.S.C. § 1962 (a).

WHEREFORE, Plaintiffs pray:

A. that the damages for these actions be determined by a jury of their peers; and

B. such other and further relief as the Court deems proper.

## VII. PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that this Honorable Court find the interpretation of the law as enacted by Congress pursuant to the Constitution of the United States and the statutes enacted pursuant thereof; and,

FURTHERMORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against the Defendants as follows:

a.    That the granting compensatory damages in an amount to be proven at trial but at least $6,230,000.00 dollars plus all trial costs, and trebling such damages pursuant to Title 18 U.S.C. § 1964 (c) and (d);

b.    That all costs for the time lost in the last three years which events have lead to the disruption, failure, and stoppage of the interstate and foreign commerce of the Plaintiffs' business, be granted in the amount of $3,000,000.00;

c. That an award be granted to the Plaintiffs of all reasonable fees for legal costs in access of $62,000.00, and all costs for the preparation of this complaint;

d. That a finding that the Defendants Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A.,Yelin Shi, and Yu Fan, through their multiple enterprises, corporations, entities, associations-in-fact, and others not so named in this complaint, estop them from raising any affirmative defenses to this action;

e. That the Defendants Sidney S. Friedman, Greg I. Rose, Weinstock, Friedman & Friedman, P.A., Yelin Shi and Yu Fan, their multiple subsidiary enterprises, and associates, known and unknown, should for the sake of public policy and to prevent further violations of the law, have orders issued "*imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce*" pursuant to Title 18 U.S.C. § 1964 (Civil remedies)(a);

f. That Defendants be directed to submit all evidence, documents, publications, contracts, and other communications in their possession to the Plaintiffs, or their attorney, as alleged in this complaint by the Plaintiffs pursuant to the Federal Rules of Civil Procedure Rule 26;

g. That the Court direct any further actions and orders against the Defendants as it may deem appropriate, but not known to the Plaintiffs as of filing of this complaint, pursuant to Title 28 U.S.C. § 1651 (Writs), and § 1361 (Action to compel an officer of the United States to perform his duty);

h. Such other and further relief as the Court deems proper.

i.  Plaintiffs preserve the right to amend this complaint upon information and evidence to be obtained which will affect the outcome of this litigation upon approval of the Court after responsive pleadings have been filed, but before responsive pleadings have been filed pursuant to Rule 15 of the Federal Rules of Civil Procedure.

## VIII.  TRIAL BY JURY

Plaintiffs demand a trial by jury pursuant to Amendment VII of the Constitution of the United States and  Federal Rules of Civil Procedure Rule 38 (b). Also, Title 28 U.S.C.A. § 2072 (Rules of procedure and evidence; power to prescribe) COMMENTARY ON 1988 AND 1990 REVISIONS—'Federal Rule—Making Procedure Altered'—Paragraph 3: *".  . .Also in that paragraph was the direction that the rules not impair the right to trial by jury guaranteed by the Seventh Amendment.* **That direction is omitted, but without moment: no reminder is needed that neither a rule nor a statute can upset a constitutional requirement."**

Right to trial by jury in a civil RICO case exists because the Supreme Court of the United States has long upheld this right pursuant to the antitrust laws and precedents which carry such a right. *Fleitman v. Welsbach St. Lighting Co.*, 240 U.S. 27 (1916 ) (Holmes, J.).  The right to trial by jury is derived  from  § 1964 (c).

Dated this 12th day of  October, 2007.

Respectfully submitted,

_____

Samuel K. Jacobs

OFFICE OF SAMUEL K. JACOBS
2300 M Street NW, Suite 838
Washington, D.C. 20037
Telephone: 202-416-1753   Cellular: 240-505-1603
E-mail: sjnhjacobs@msn.com

_____

Nancy Heckerman

## APPENDIX FOR COMPLAINT AGAINST SIDNEY S. FRIEDMAN, GREG I. ROSE, AND, WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.

### I. UNITED STATES CODE:

### A. FAIR DEBT COLLECTION PRACTICES ACT:

**Title 15 U.S.C.A. § 1692d** (Harassment or abuse).

"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the debt of collection. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

"(1) **The use or threat of violence or other criminal means to harm the physical person, reputation, or property of any person.**

"(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3) of this act.

(4) The advertisement for sale of any debt to coerce payment of the debt.

"(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

**Title 15 U.S.C.A. § 1692e** (False or misleading representations):

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

"(2) The false representation of –

"(A) the character, amount, or legal status of any debt; or

"(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

"(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

"(8) Communicating or threatening to communicated to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

*52-2058*
*RBW*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SAMUEL K JACOBS and NANCY HECKERMAN. | RESERVOIR LIMITED PARTNERSHIP |

*11001*

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Dist of Columbia
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

2300 M STREET N.W
SUITE 838
WASHINGTON D.C. 20037

ATTORNEYS

*JURY ACTION*

Case: 1:07-cv-02058
Assigned To : Walton, Reggie B.
Assign. Date : 11/14/2007
Description: Pro Se General Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**    OR    **◉ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☒ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

EQUITABLE LIEN PURSUANT TO TITLE 18 USC 1956, 1957, 241 1963 & 981. ALSO, TITLE 18 USC 1966.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 9,292,000 <br> **JURY DEMAND:** | Check YES only if demanded in complaint <br> YES ☒  NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒   NO ☐    If yes, please complete related case form.

**DATE** November 14 2007    **SIGNATURE OF ATTORNEY OF RECORD** _[signature]_

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

